Richard L. GEPHART,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 86–1449.

United States Court of Appeals,
Sixth Circuit.

April 14, 1987.

Edward B. Goodrich, Mohney, Goodrich & Titta, P.C., Grand Rapids, Mich., for plaintiff-appellant.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Julie Ann Woods, Ronald F. Fischer, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Michael L. Paup, Lead Counsel, Roger M. Olsen, Wynette J.

Hewett, Patricia Bowman, Tax Div., Dept. of Justice, Washington, D.C., Michael J. Roach, for defendant-appellee.

Before ENGEL, KRUPANSKY and GUY, Circuit Judges.

PER CURIAM.

Plaintiff, Richard L. Gephart, appeals the judgment of the district court rendered after a bench trial finding him liable as a responsible person who willfully failed to pay over withholding taxes under 26 U.S.C. § 6672. For the reasons stated below, we affirm.

Plaintiff was an employee of The Computer Place, a registered Michigan corporation in the business of designing, selling, installing, and servicing computers and computer software. Beginning on June 1, 1979, until his resignation on December 20, 1979, plaintiff was the general manager. He was never a shareholder, director, or officer of The Computer Place. On July 5, 1982, the United States, through the Internal Revenue Service, assessed against plaintiff a 100% penalty under § 6672 of the Internal Revenue Code of 1954, which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672. The government charged that plaintiff was a responsible person of The Computer Place for the second, third, and fourth quarters of 1979, who willfully failed to truthfully account for and pay over withholding taxes or who willfully attempted in some manner to evade or defeat those taxes or payment thereof in the amount of $52,842.16. After paying $692.38 on the 100% penalty assessment against him, plaintiff commenced this case by filing a complaint against the United States for a refund. The government asserted a counterclaim against Gephart for the unpaid balance, plus interest, on the 100% penalty.

In finding plaintiff liable, the trial court made the following factual findings. Prior to plaintiff becoming general manager, Michael Kuncaitis and David Bosset, the shareholders and officers of The Computer Place, determined that Bosset should take a less active role in the day-to-day management of the company because of his dominant personality. At that time, they asked plaintiff to become general manager.

Plaintiff holds a bachelor of business administration degree from the University of Michigan and an M.B.A. from Western Michigan University. Prior to his involvement with The Computer Place, he had been employed for seven years as an accountant with General Motors, working at various times in the cost, payroll, billing, and audit departments; for two years as Office Manager for Meijer supermarkets; for sixteen years at Lear Seigler, working at various times as Supervisor of Accounts Payable and as Planning Manager and Expediting Manager in the Production Control Department; and for five years as Vice President of Finance for Somerville Technical Services. Immediately prior to being hired by The Computer Place, Mr. Gephart was part owner of a company known as Adapts, Inc., which was engaged in the data processing business. Around May 1, 1979, Adapts was acquired by and became the wholly owned subsidiary of The Computer Place. Mr. Gephart received, as total consideration for his interest in Adapts, a $10,000 promissory note from The Computer Place. No payments of principal or interest were ever made on the promissory note to Mr. Gephart.

As general manager of The Computer Place, plaintiff assumed many of the ordinary day-to-day administrative, accounting, and operating functions of the business, including the writing of letters to customers and suppliers and scheduling and attending sales and management meetings. Mr. Gephart had authority to sign The Computer Place checks drawn on the Se-

curity First Bank and Trust Company and the Old Kent Bank and Trust Company checking accounts. He signed most of the checks in payment of creditors of The Computer Place as well as for net payroll of The Computer Place employees. There was no monetary limit placed on plaintiff's check signing authority. Mr. Gephart also had the authority to hire and fire office or accounting personnel with the approval of either Mr. Kuncaitis or Mr. Bosset.[1]

Mr. Gephart represented The Computer Place in dealings with creditors and suppliers, with persons or entities that owed the company money, with outside consultants utilized by the company, and with the State of Michigan concerning delinquent taxes. He also convened and took an active part in management meetings.

Plaintiff periodically reviewed the accounts payable with Cheryl Goebel, the secretary and bookkeeper, to determine which bills should be paid. Ms. Goebel prepared the checks and delivered them to Mr. Gephart for his signature. Ordinarily the checks then went to Mr. Bosset for his approval. The Computer Place experienced cash flow problems in 1979. There was not enough money to pay all of the bills, all of the payroll, and the withholding taxes. Plaintiff would therefore direct Ms. Goebel to write checks for those expenses that were crucial or past due. The payroll was always met; however, on occasion Mr. Bosset instructed the employees not to cash their checks until there was money to cover them.

Mr. Bosset was absent from the office a great deal during the summer and fall of 1979. In his absence, Ms. Goebel turned to either Mr. Kuncaitis or Mr. Gephart to decide which creditors should be paid. Payroll checks did not require the approval of Mr. Bosset before they were distributed. Mr. Gephart had authority to sign and distribute them.

At the time plaintiff became employed by The Computer Place, he was well aware of the withholding tax requirements and understood that they would have to be paid on a weekly basis. Prior to Mr. Gephart's employment, Ms. Goebel had stopped preparing federal withholding tax checks. In August, 1979, Gephart instructed Ms. Goebel to begin preparing federal withholding tax checks again. He was aware that the withholding taxes were not being paid, and was also aware of the company's cash flow problems.

Plaintiff discussed delinquent payroll taxes with Mr. Bosset. Bosset told plaintiff that it was none of his business and that he should not worry about it. Both plaintiff and Bosset believed that only officers of the corporation could be held liable for nonpayment of withholding taxes. In fact, in September, 1979, Bosset offered plaintiff the position of president of The Computer Place. Plaintiff declined the offer because he did not want to be held liable for the tax situation and because he believed it would not change his authority within the office.

Plaintiff never attempted to send out the withholding tax checks. He continued to distribute payroll checks even though he knew that the withholding taxes were not being paid.

Section 3102 of the Internal Revenue Code of 1954 requires an employer to withhold social security taxes imposed on its employees and section 3402(a) of the Code requires the withholding of income taxes from wages of employees. Withholding taxes are not simply a debt; they are part of the wages of the employee, held by the employer in trust for the government. 26 U.S.C. § 7501. The "trust fund taxes" are for the exclusive use of the Government and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose. *McGlothin v. United States*, 720 F.2d 6, 8 (6th Cir.1983).

---

**1.** The trial court noted in this regard that although Mr. Gephart denied at trial any authority to hire and fire employees, he stated under oath at his deposition that with the approval of either Mr. Bosset or Mr. Kuncaitis he could have hired office or accounting personnel, and that he had done so on one occasion.

Section 6672 provides that "any person" who willfully fails to account for and pay over withholding taxes shall be liable for the full amount not paid over to the government. Liability attaches if an individual meets two requirements. He must be a "responsible person" under the statute, and he must "willfully" fail to pay over to the government the amount due. *McGlothin*, 720 F.2d at 8. Congress enacted section 6672 to protect the government against losses by providing it with another source from which to collect the withheld taxes. "Despite its denomination as a 'penalty' assessment, the statutory liability imposed by section 6672 is essentially civil in nature." *Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

The rationale for this system was explained by the court in *Bolding v. United States*, 565 F.2d 663, 215 Ct.Cl. 148 (1979):

> Under the system of withholding taxes provided by the Internal Revenue Code, employees are entitled to credit for the amounts of FICA and income taxes withheld from their wages regardless of whether or not the employer turns the funds over to the Government. I.R.C. §§ 1462, 3102(a).... Since, therefore, the Government may actually be out-of-pocket by way of credit or refund for taxes it has never received, Congress has allowed the IRS more stringent protective devices to insure collection of payroll taxes than in the case of many other taxes.

*Id.* 565 F.2d at 669.

It is well established that the test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors. *United States v. Davidson*, 558 F.Supp. 1048, 1052 (W.D.Mich.1983). Section 6671(b) of the Internal Revenue Code of 1954 defines the word "person" to include "an officer or employee of a corporation ... who as such officer or employee ... is

under a duty to perform the act in respect of which the violation occurs."

Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are: (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation. *Braden v. United States*, 318 F.Supp. 1189, 1194 (S.D.Ohio 1970), *aff'd*, 442 F.2d 342 (6th Cir.), *cert. denied*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

More than one person can be a responsible officer of a corporation. *Id.* Essentially, liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances. *Davidson*, 558 F.Supp. at 1053. It is basically a factual inquiry. Generally, such a person is one "with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes," or more explicitly, one who has "authority to direct payment of creditors." *Barrett v. United States*, 580 F.2d 449, 452, 217 Ct.Cl. 617 (1978).

Based on these principles, the trial court found that plaintiff was actively involved in the company's financial affairs, stating:

> [Plaintiff] was given the position of General Manager because of his ample financial and management experiences. He gave directions to Ms. Goebel as to what checks should be drawn each month. When the cash flow problems became severe, he often had to choose between creditors because not all of the financial obligations of the company could be met. Mr. Gephart convened and participated in management meetings where the company's financial straits were discussed. He identified himself as General Manager in his dealings with creditors and debtors of

474

the company and negotiated with the State of Michigan on the issue of payment of delinquent taxes.

While finding that plaintiff did not have the same authority as the officer-directors, the court concluded that he had greater management responsibilities. The court also noted that while Gephart and Bosset both shared the common belief that only officers of a corporation can be held personally liable for unpaid withholding taxes, this mistaken belief did not shield plaintiff from liability as a responsible person.

Relying on *Howard v. United States*, 711 F.2d 729 (5th Cir.1983) (responsible person follows the directions of a superior not to pay withholding taxes to the government at his peril), the court held that although Bosset might have fired plaintiff had he paid the taxes, that circumstance did not make plaintiff any less responsible for their payment.

Based upon the case law and the evidence presented at trial, the court held that plaintiff had failed to overcome the presumption that he was a responsible person of The Computer Place during the second, third, and fourth quarters of 1979. Moreover, because plaintiff admitted that he was aware of the unpaid federal withholding tax liability, and that, notwithstanding such knowledge he continued to sign checks in payment of other corporate obligations, the court concluded that his actions were willful. Accordingly, plaintiff was found to be a responsible person who willfully failed to pay the funds due to the Government.

## I.

Plaintiff first challenges the court's determination that he was a responsible person of The Computer Place. Likening the facts here to those presented in *Barrett*, 580 F.2d 449, and *Geiger v. United States*, 583 F.Supp. 1166 (D.Ariz.1984), plaintiff argues that he did not exercise sufficient control to be found to be a responsible person. In *Geiger*, the court refused to find liability where plaintiff was not a shareholder, director, or officer of the corporation and where plaintiff signed checks "only at the

behest and direction" of the company's president. 583 F.Supp. at 1168-69. Likewise, although Barrett had the authority to sign checks, the court rejected the government's claims of liability where plaintiff

had no responsibility for making up the payroll. She had no authority over payment of the salaries of company employees. Creditors did not ask for her when inquiring about being paid. She had no responsibility for the preparation of tax returns for the company, nor did she sign any such returns. Plaintiff did not negotiate company contracts, bill customers, order supplies or hire and fire employees.

580 F.2d at 453. These cases are obviously distinguishable from the facts presented here.

▮ We acknowledge that plaintiff is not an officer, shareholder, or director of The Computer Place. But as recognized in *Braden, supra*, this is only one of the factors which may be considered. Like the court in *Barrett*, the court below looked to other factors to determine the degree of financial authority exercised by plaintiff. Specifically, the trial court found that plaintiff was responsible for ordinary day-to-day administrative and operating functions of the business. The court also looked to plaintiff's authority to sign checks with no monetary limit, his dealings with the company's creditors and suppliers, his authority to negotiate regarding tax liability with the State of Michigan, and plaintiff's responsibility in signing and distributing payroll checks.

Most significantly, plaintiff testified that he had the authority to initially determine which creditors would be paid in that he "reviewed the accounts payable and worked with Cheryl [Goebel] to determine which checks needed to be paid, and then I turned the checks over to Mr. Bosset for ... his approval to mail." Although plaintiff points to the testimony of Cheryl Goebel to bolster his argument that Bosset really exercised "final" authority, she also testified that plaintiff made the initial decisions as to which checks would be drawn.

■ Responsibility for purposes of section 6672 is a matter of status, duty, and authority. *Mazo v. United States,* 591 F.2d 1151, 1153 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). It is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability under this section. Rather, it is sufficient that the person have significant control over the disbursement of funds. *Neckles v. United States,* 579 F.2d 938, 940 (5th Cir.1978).

Unlike *Barrett* and *Geiger,* these additional factors indicate that plaintiff did have significant control over the disbursement of funds. Accordingly, the trial court did not err in finding plaintiff to be a responsible person.

## II.

■ Plaintiff next argues that he did not willfully fail to collect and pay over withholding taxes. In *Calderone v. United States,* 799 F.2d 254 (6th Cir.1986), we quoted with approval the definition of "willfulness":

> More than mere negligence is required for "willfulness"; a person is not "willful" if as a result of negligence he is unaware of the default in the payment of payroll taxes.... But willful conduct may also include "a reckless disregard for obvious or known risks...."

*Id.* at 259–60 (quoting *Bolding,* 565 F.2d at 672).

■ Plaintiff concedes that he was aware that federal withholding taxes were not being collected and set aside for payment to the government. Gephart argues, however, that because Bosset told him he was not responsible for the payment of taxes, he could not be liable as willfully failing to pay. Essentially, plaintiff again argues that he was not a responsible person because he was told by the corporation's president that he had no responsibility for the payment of taxes.

Willfulness is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the

government. *Davidson,* 558 F.Supp. at 1056. Plaintiff admitted that he was aware of the unpaid federal withholding tax liability of The Computer Place, and that, notwithstanding such knowledge, he continued to sign checks in payment of other corporate obligations. This action constitutes willfulness within the meaning of section 6672.

Moreover, it is generally held that one who is a responsible person follows the directions of a superior not to pay withholding taxes to the government at his peril.

> The fact that Jennings might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment. Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means *effective power* to pay. That Howard had the authority to pay in this context is demonstrated by the fact that he did issue small checks without Jennings' approval on a number of occasions. Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations.

*Howard,* 711 F.2d at 734 (citations and footnote omitted). *See also Roth v. United States,* 779 F.2d 1567 (11th Cir.1986) (otherwise responsible person does not lose that status even if instructed by superior officer not to pay taxes).

Consequently, there is evidence to support the court's finding that plaintiff was a responsible person who willfully failed to pay over taxes to the government.

## III.

Plaintiff next complains about certain factual findings of the trial court, which plaintiff submits are in error. However, our review of the record indicates that there was testimony, or testimony from which reasonable inferences could be drawn, to support the trial court's findings. Accordingly, they cannot be characterized as clearly erroneous. *Anderson v. City of*

*Bessemer*, 470 U.S. 564, 573–77, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). While plaintiff may believe that the trial court should have credited his testimony, we are not free to so rule.

### IV.

Finally, plaintiff argues that the trial court confused his administrative authority in the corporation with financial responsibility. For instance, plaintiff submits that even if he had refrained from signing checks until the taxes were paid, Bosset or Kuncaitis could have signed all of the checks in any event. Thus, plaintiff really had no ultimate financial responsibility and could not have changed the fact that taxes were not paid.

 We think this characterization indicates a basic misunderstanding of the liability which attaches under section 6672. While it may be that Bosset or Kuncaitis were *more* responsible than plaintiff, and exercised *greater* authority, this does not affect a finding of liability against plaintiff. Section 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs. *Bolding*, 565 F.2d at 671. "Realistically read, [§ 6671(b)] encompasses all those who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation of [§ 6672], even though liability may thus be imposed on more than one person." *Id.* (quoting *Scott v. United States*, 354 F.2d 292, 296, 173 Ct.Cl. 650 (1965)).

Accordingly, the judgment of the district court is AFFIRMED.