Elmer E. McDERMITT,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 91–3267.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 12, 1991.
Decided Jan. 29, 1992.

Michael K. Yarbrough (argued and briefed) Frost & Jacobs, Columbus, Ohio, for plaintiff-appellant.

Albert Ritcher, Office of the U.S. Attorney, Columbus, Ohio, Gary R. Allen, Acting

Chief (briefed), Kevin M. Brown, Ann Belanger Durney, Christine Grant (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Henry J. Riordan, Tax Div., U.S. Dept. of Justice, Washington, D.C., Thomas Joseph Riley, Hahn, Loeser & Parks, Columbus, Ohio, for U.S.

Jerome C. Tinianow (argued and briefed) for Larry Merauda.

Before: MILBURN and GUY, Circuit Judges, and ALLEN, Senior District Judge.[*]

MILBURN, Circuit Judge.

Plaintiff Elmer E. McDermitt appeals the district court's judgment for the defendant and counterclaimant, the United States of America, in this action seeking a refund of income taxes paid to the United States on behalf of the employees of Mid–America Constructors, Inc. ("Mid–America"). The principal issues on appeal are (1) whether this court has jurisdiction over the appeal in this case, (2) whether the district court erred in finding plaintiff to be a responsible person who was individually liable to pay the 100 percent penalty provided for by 26 U.S.C. § 6672, and (3) whether the district court erred in failing to allow plaintiff's claims for contribution against certain other parties. For the reasons that follow, we affirm.

## I.

Plaintiff Elmer E. McDermitt owned and operated Capital City Excavating Company, a corporation engaged in excavating and the construction of streets, bridges, and sewers. On August 15, 1980, plaintiff established Mid–America Constructors, Inc., an entity to be engaged in the same kind of work as Capital City Excavating Company, yet one which would be a non-union shop whose controlling shareholder would be plaintiff's wife, Donna McDermitt, a feature that might qualify the business for certain government projects set aside for minority-owned businesses.

Although plaintiff occupied no official position with Mid–America, he provided the

---

[*] Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation.

start-up capital and made all the major personnel hiring and firing decisions, including the hiring of president Larry A. Miranda and secretary-treasurer Lori J. Matthews. He controlled the performance of their duties by giving them advice, which he admitted they were not free to disregard, and he conceded that he could have fired either Miranda or Matthews at will.

Plaintiff was also actively involved in the meetings of Mid–America's board of directors, most of which were held at his home. While he reviewed the financial statements, including the tax liabilities, of Mid–America and discussed and approved its long-term plans in all its substantial transactions, his wife, who owned 80 percent of the corporation's stock, served soft drinks. A corporate organization chart offered in evidence by the government showed plaintiff in overall charge of Mid–America and Capital City Excavating Company. Miranda acknowledged that plaintiff had appointed him president of Mid–America, that plaintiff was his "boss," and that plaintiff established his job responsibilities throughout 1984 and 1985. Matthews also testified that plaintiff was "head honcho or whatever, the head of the company."

On March 15, 1984, Mid–America executed a note in favor of BancOhio in the sum of $125,000. Mr. and Mrs. Miranda and Mr. and Mrs. McDermitt personally guaranteed this note which required payments in excess of $2,100 per month. At about the same time as the making of this note, plaintiff accepted employment with TrueSports, a subsidiary of Red Roof Inn, Inc., and began spending a considerable portion of his time away from his construction companies. Throughout this period, however, he maintained contact with Miranda and Matthews and met personally with Miranda at least once a month.

Of particular concern to plaintiff was the payment of the BancOhio loan on which he was personally liable as a guarantor. During 1984 and 1985, Mid–America began experiencing financial difficulties and found itself unable to meet all its financial obligations. Matthews, who, as secretary-trea-surer, was responsible for the payment of the company's liabilities, informed Miranda of the cash flow problems. Miranda told her what bills to pay, but she also had standing orders from plaintiff that the BancOhio note was to be paid "first and foremost." If Matthews was tardy in making payment on the BancOhio note, she received a telephone call from plaintiff who "reamed her out."

By June 1985, Mid–America's financial condition was critical. Plaintiff met with Miranda and Matthews and directed them to set up a separate secret bank account at Freedom Federal Savings and Loan. They were to deposit monies received into that account in order to foil the Internal Revenue Service, which was expected to attach the corporation's BancOhio account at any moment. Matthews and Miranda did as instructed and deposited approximately $17,000 into the new Freedom Federal account. When Miranda and Matthews suggested to plaintiff that the corporation's tax liability be reduced with the funds available in that account, plaintiff warned Matthews that he would stop payment on any checks she sent the Internal Revenue Service. He then directed her to use the funds deposited in the Freedom Federal account to prepay the BancOhio loan, and Matthews did as instructed.

Throughout 1984, Matthews prepared various balance sheets and financial statements which showed "taxes payable." Plaintiff reviewed these statements at corporate meetings and knew that the figure on the "taxes payable" line was composed mainly of withholding taxes because the financial statements used by Mid–America were in the same form as those used at Capital City, with which plaintiff was thoroughly familiar.

On April 12, 1988, the Secretary of the Treasury made an assessment against plaintiff in the amount of $61,813.16 pursuant to 26 U.S.C. § 6672. Plaintiff paid $1,000 to the Internal Revenue Service, then brought an action in the district court on January 4, 1989, to recover this payment. The United States counterclaimed for the balance of the assessment made

against plaintiff, and it joined Miranda and Matthews as counterclaim defendants, alleging they were jointly and severally liable for the assessment. On May 31, 1989, Miranda filed a counterclaim against the United States to recover $1,000 which he had paid in partial satisfaction of the assessment against him, cross-claimed against plaintiff Elmer McDermitt for contribution and indemnification, and filed a third-party complaint against McDermitt's wife, Donna McDermitt.

After this development and alignment of the parties had taken place through the various pleadings filed, plaintiff McDermitt paid the assessment in full, then amended his complaint on July 18, 1990, to recover the amount he paid, *viz.*, $72,831.50. In this amended complaint, plaintiff also cross-claimed against Miranda and Matthews for contribution and indemnity.

The case was tried to the district court, and on January 31, 1991, the court entered an "Opinion and Order" in which it held that McDermitt, Matthews, and Miranda were jointly and severally liable for the assessment, but that there was no right of contribution or indemnity between them.[1] It also held that Donna McDermitt had not participated in the affairs of Mid–America and therefore was not responsible for its tax liabilities. Accordingly, on January 31, 1991, the district court entered a "Judgment in a Civil Case" in the following language:

> IT IS ORDERED AND ADJUDGED that the Court finds in favor of the United States against all counterclaim defendants. All claims for contribution and indemnification are DISMISSED. Miranda's third-party claim is also DISMISSED.

Notice of appeal was filed by plaintiff Elmer E. McDermitt on February 26, 1991.

Since the judgment did not set forth any sums certain, the United States moved for a corrected judgment, and, on March 12, 1991, the district court entered another judgment which recited recoveries by the United States against McDermitt, Miranda and Matthews, each in the sum of $61,-813.16 plus statutory additions and less any payments made. On March 19, 1991, however, the district court vacated its March 12, 1991, judgment entry in order to prevent confusion and duplication, thus leaving the January 31, 1991, "Judgment in a Civil Case" as its final order in this case. Thus, this timely appeal followed.

## II.

### A.

■ At the outset, the government suggests that this court lacks jurisdiction over this appeal because the district court "did not reduce the judgment to a sum certain amount as required under Fed.R.Civ.P. 58." Brief of the United States at 19. The government relies on *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958), in which the Court held that an order in an action for money constituted the final judgment of the district court if it "embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case." *Id.* at 232, 78 S.Ct. at 677–78. The Court then elaborated on the essential elements of a judgment for money, stating that

> it is obvious that a final judgment for money must, at least, determine, or specify the means for determining, the amount; and an opinion, in such a case, which does not either expressly or by reference determine the amount of money awarded reveals doubt, at the very least, whether the opinion was a *"complete* act of adjudication" ... or was intended by the judge to be his final act in the case.

356 U.S. at 233–34, 78 S.Ct. at 678 (citation omitted). In *Schaefer*, the Court had before it a situation in which a taxpayer-plaintiff had sued to recover federal stamp taxes and had prevailed below. The judgment entered by the district court, how-

---

1. Miranda has not appealed, but has filed a brief urging affirmance of the district court's judgment.

ever, did not state facts necessary to compute the amount of interest to be included in plaintiff's recovery, and the Supreme Court held that the judgment did not meet the requisites for a final money judgment from which an appeal would lie.

The government also relies on *Philhall Corp. v. United States*, 546 F.2d 210 (6th Cir.1976), to support its argument that the judgment in this case is not final and appealable. In *Philhall*, this court, relying primarily on *Schaefer*, held that a document entered following the return of a jury verdict in favor of taxpayer-plaintiff was legally insufficient to constitute a final judgment. The document failed as a judgment because it "failed to state whether the taxpayer was to receive the refund and interest requested in its complaint.... [and] failed to specify the amount of the refund and the dates for computing interest." *Id.* at 213–14. The court also held that the verdict returned by the jury, which stated only that the taxpayer's gain was a capital gain and not ordinary income, was in reality a special verdict. Under Rule 58, a judgment on a special verdict cannot be entered by the clerk as a final judgment without the approval of the district judge, and no such approval had been given in this case.

As in *Schaefer*, the situation in *Philhall* was that of a taxpayer-plaintiff succeeding at trial against the government on a claim for a refund of federal income taxes. These cases are inapposite because neither case considered the situation in which the government prevails as a defendant and the plaintiff loses in his attempt to recover taxes, penalties, and interest previously paid in full. In the present case, plaintiff is the loser at trial, not the winner.

There is no rule or statute that prescribes exactly what form a judgment must take. *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 233, 78 S.Ct. 674, 678, 2 L.Ed.2d 721 (1958) ("no statute or rule that specifies the essential elements of a final judgment") (citing *United States v. Hark*, 320 U.S. 531, 534, 64 S.Ct. 359, 360–61, 88 L.Ed. 290 (1944)); *Diamond v. McKenzie*, 770 F.2d 225, 233 (D.C.Cir.1985)

("[N]either [Rule 58] nor any other undertakes to prescribe the precise form the document should take....") (concurring opinion); 11 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2652 (1973) ("There still is no rule prescribing exactly what form that document [judgment] should take.").

Although there is no particular formula to follow, Federal Rule of Civil Procedure 84 provides that the "forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Form 32, Appendix of Forms, Federal Rules of Civil Procedure, sets out the following language as an appropriate form for a defendant's verdict: "It is Ordered and Adjudged that the plaintiff take nothing, that the action be dismissed on the merits, and that the defendant C.D. recover of the plaintiff A.B. his costs of action." Although the district court in this case rendered judgment "in favor of the United States against all counterclaim defendants," its judgment was in essence a defendant's judgment because the United States was originally cast by plaintiff as a defendant against whom demand was made for the refund of monies already paid over in full. Thus, even though the United States also occupied the position of counterclaimant, the judgment *as between McDermitt and the United States* is essentially a judgment for a defendant against whom plaintiff takes nothing. Its effect is to allow the United States to retain the funds previously paid it by plaintiff McDermitt. While it may be true that money judgments in favor of a plaintiff should contain a sum certain in order to be considered final, that rule does not pertain to situations such as tax refund cases in which the defendant has been satisfied in full and the question is whether or not it may remain so. In such cases, "plaintiff loses" or "defendant wins" would be a sufficient judgment.

The cases recognize this difference between the forms of judgment appropriate for a plaintiff's judgment and a defendant's judgment. In *United States v. Cooke*, 215

**1250**

F.2d 528, 530 (9th Cir.1954), the Ninth Circuit held that a judgment entry for the plaintiffs was insufficient to constitute a final judgment where it merely stated "the names of the successful litigants without stating the amounts of their respective recoveries." In so holding it distinguished cases in which the verdict was for the defendant.

> The case is different from the cases holding valid an entry that the judgment was in favor of the defendant. There it is apparent from the entry that the plaintiffs were denied any relief and the substance of the judgment is shown.

*Id.* See *Porter v. Borden's Dairy Delivery Co.*, 156 F.2d 798, 799 (9th Cir.1946) ("Filed final decree for Deft" is sufficient as a defendant's judgment). The Tenth Circuit has noticed this logical difference in the forms of judgment for the plaintiff and the defendant, *Woods v. Nicholas*, 163 F.2d 615, 617 (10th Cir.1947), and Form 32 also distinguishes between a judgment for the plaintiff, which should state a sum certain, and a judgment for the defendant, which need only state that plaintiff has failed to recover.

In suggesting that this court lacks jurisdiction, the government clouds the issue by arguing that "it is difficult to glean from the opinion and order the exact sums certain against taxpayer, Mr. Miranda, and Ms. Matthews, especially since taxpayer paid the assessment plus interest in full, and Mr. Miranda paid approximately $2,000 on the same amount." Brief of the United States at 21. There might be merit to this argument if either Mr. Miranda or Ms. Matthews had appealed, but neither has. Only Elmer McDermitt, the original plaintiff in this case, has perfected an appeal. As to McDermitt, the judgment in favor of the United States means that McDermitt takes nothing. This leaves the United States in undisturbed possession of the full amount of the assessment paid to it by plaintiff McDermitt, and thus nothing more remains to be settled between McDermitt and the United States. If the judgment as entered should be ambiguous or insufficient as respects other parties who have not appealed, the United States may pursue such methods as it thinks best for clarification of this matter in the district court. In the event that it is unsatisfied with the district court's actions in correcting the form of the judgment, the United States has the right of appeal to this court, a right it has not availed itself of.

The judgment in this case, although lacking in specificity with respect to the sums of money owed to the United States by the non-appealing parties, Matthews and Miranda, is viable as between plaintiff McDermitt and defendant United States of America. As a defendant's judgment in a tax refund action, this judgment is sufficient as a final order, and we have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

**B.**

■ Plaintiff McDermitt argues that the district court erred in finding him to be a "responsible person," as defined in 26 U.S.C. § 6671(b), and in finding that he willfully failed to perform the acts specified in 26 U.S.C. § 6672(a).

■ This court reviews a district court's findings of fact under Fed.R.Civ.P. 52, which provides that the district court's findings of fact are to be accepted unless clearly erroneous. The district court's conclusions of law are subject to de novo review on appeal, as are its findings as to "ultimate facts" or mixed questions of law and fact. *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989).

Section 6672 provides that "any person" who willfully fails to pay withheld income taxes is personally liable for the full amount of the taxes not paid. Thus,

> [L]iability attaches if an individual meets two requirements. He must be a "responsible person" under the statute, and he must "willfully" fail to pay over to the government the amount due.

*Gephart v. United States*, 818 F.2d 469, 473 (6th Cir.1987).

The test for determining whether a person is a "responsible person" is a functional one focusing mainly on

the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors.

*Id.*

The willfullness element is present

if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government.

*Id.* at 475.

An important rule of law to be kept in mind during the review of cases like this is that the taxpayer carries the burden of proving the assessment wrong.

When a party pays part of the penalty existing for failure to pay withheld taxes and the government counterclaims for the remainder of the refund, the taxpayer has the burden of proving that the assessment was wrong. The assessment is presumed to be correct. Therefore, the taxpayer has the burden of showing that he was not a responsible party on both the refund claim and the counterclaim.

*Sinder v. United States*, 655 F.2d 729, 731 (6th Cir.1981); *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988); *Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir.1987) (collecting cases); *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986).

With the burden of proof and persuasion thus placed upon plaintiff, it is clear that the district court committed no error in its findings of fact and conclusions of law. Rule 52 requires this court to give "due regard" to the opportunity of the trial court to judge the credibility of the witnesses. In this case, the district court specifically found that plaintiff lacked credibility and determined to give his testimony little weight. Once the district court made this credibility determination, thereby rejecting plaintiff's exculpatory testimony, it was free to give decisive weight to the testimony of Miranda and Matthews. Their testimony showed that plaintiff established Mid–America, started it financially, and appointed Miranda and Matthews to

their positions as officers. Although not an officer of the corporation, plaintiff was in every sense the boss. He had the power and the authority to direct the payment and non-payment of the corporation's liabilities, and in fact he gave standing orders that the BancOhio loan be paid on a priority basis. Throughout 1984 and continuing into mid–1985, plaintiff reviewed the financial statements of Mid–America which showed substantial tax liabilities that he must have known represented income tax withheld and due to the United States.

Plaintiff argues that he became responsible for the payment of taxes only after June 26, 1985, when he directed the opening of a new bank account at Freedom Federal to sequester funds that would otherwise be seized by the Internal Revenue Service. Plaintiff thus admits his status as a responsible person after June 26, 1985, and accepts his liability as a responsible person to the extent of $17,190.00, the amount actually sequestered. He seeks to avoid liability, however, for all taxes that accrued prior to June 25, 1985.

The evidence shows, however, that plaintiff left standing orders to pay Mid–America's note to BancOhio ahead of all other obligations. At the time plaintiff gave and reinforced his standing order, he knew from regular review of the corporation's financial statements that its tax liabilities were mounting. This fact situation is similar to that in *Gephart v. United States*, 818 F.2d 469, 475 (6th Cir.1987), in which the general manager of a corporation was held liable as a responsible person because he knew withholding taxes were not being paid, and, "notwithstanding such knowledge, he continued to sign checks in payment of other corporate obligations." We held that this action constituted "willfulness within the meaning of section 6672." *Id.*

In this case, the district court found that plaintiff was aware of the non-payment of delinquent taxes because "[t]he outstanding tax liability was reflected in the financial statements prepared by Matthews and reviewed by McDermitt. The delinquent taxes were also discussed at two different

meetings in June 1985." This inference of plaintiff's knowledge of the non-payment of taxes is a fair one, particularly in light of Matthews' testimony on that subject. Plaintiff's continuing enforcement of his standing order caused the payment of other corporate obligations with funds that would have been available to pay the government. This conduct constitutes willfulness under *Gephart.*

There is ample evidence of plaintiff's control of the corporation and his complete power and authority to dictate the order in which corporate liabilities were paid. When he dictated that certain liabilities were to be paid with funds that could have been used to pay the delinquent taxes he knew were due and owing, he willfully failed to pay withholding taxes. The district court was therefore correct in concluding that plaintiff had failed to prove that the assessment against him was wrong.

### C.

■ Plaintiff McDermitt argues that his cross-claims against Matthews and Miranda were erroneously dismissed by the district court. He concedes that there is no right of contribution specifically permitted under section 6672[2] but contends that the district court should have applied the Ohio law of contribution. In support of this proposition, plaintiff cites *Swift v. Levesque,* 614 F.Supp. 172, 173 (D.Conn.1985), a case which held that section 6672 "does not, however, foreclose a right to contribution under state law." In *Swift,* the contribution action was brought as a separate case, and jurisdiction was accepted by the district court on grounds of diversity of citizenship of the parties. Because Connecticut case law was devoid of any case on point, the district court assumed the difficult task of determining whether Connecticut would recognize a cause of action for contribution among the parties.

In this case, however, Ohio law is quite clear. Ohio Revised Code § 2307.31 provides for contributions among joint tortfeasors in situations where "two or more persons are jointly and severally liable in tort for the same injury or loss to person or property." Subsection (E) specifically provides that section 2307.31 "does not apply to breaches of trust or of other fiduciary obligations," thus eliminating the right to contribution in those situations.

This court has recognized that an employer holds withheld taxes in trust for the United States.

> Withholding taxes are not simply a debt; they are part of the wages of the employee, held by the employer in trust for the government. 26 U.S.C. § 7501. The "trust fund taxes" are for the exclusive use of the Government and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose.

*Gephart v. United States,* 818 F.2d at 472. Thus, this is a situation in which plaintiff is made personally liable for income taxes because he tortiously converted a trust fund. This is a "[breach] of trust or ... other fiduciary [obligation]" under the applicable Ohio statute, and it deprives plaintiff of any right of contribution he may have had.

The cases cited by plaintiff have to do with equitable contribution in situations where there is joint liability on a debt. Section 6672, by contrast, imposes personal liability for tortious conversion of a trust fund, a situation to which none of plaintiff's cases apply. Moreover, all plaintiff's cited cases were decided prior to the enactment of Ohio Rev.Code § 2307.31 in 1976. Because the statute is more recent than the plaintiff's cases, more pertinent to tort situations as distinguished from the cases involving general debt, and because it covers the specific conduct in this case, we accept it as the controlling Ohio law.

Because plaintiff's actions involved the willful breach of a trust, Ohio would not allow him contribution against another party. The district court was therefore correct in dismissing plaintiff's claims for contribution.

---

**2.** No such federal right is recognized. *Sinder v. United States,* 655 F.2d 729, 732 (6th Cir.1981).

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.