47 F.3d 1169
 75 A.F.T.R.2d 95-813, 95-1 USTC P 50,044,
Unempl.Ins.Rep. (CCH) P 14555B.15
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald A. MCMILLAN, Sr., Plaintiff and Counterclaim Defendant,
v.
UNITED STATES of America, Defendant and Counterclaim
Plaintiff-Appellant
v.
Joseph W. KOLBE; Donald A. McMillan, Jr., Counterclaim
Defendants-Appellees.
 Nos. 93-1338, 93-2245.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1995.
 
 Before: KEITH, NELSON, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 The issue on appeal is whether the government submitted sufficient evidence to support a finding that Joseph Kolbe ("Kolbe" or "taxpayer") exercised significant control over Helfrecht Machine Company ("Helfrecht") and thus qualified as a responsible person under 26 U.S.C. Sec. 6672 such that the district court erred in granting summary judgment to taxpayer. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 This case arises out of the Internal Revenue Service's ("IRS") assessment of a penalty against taxpayers Donald McMillan, Sr., Donald McMillan, Jr., and Kolbe for Helfrecht's failure to remit withholding taxes owed for the last two quarters of 1983.[1] McMillan Sr. commenced suit against the government seeking a refund. The government asserted a counterclaim for the unpaid portion of the assessment, joining McMillan Jr. and Kolbe as defendants.[2] Kolbe moved for summary judgment, asserting that he was not a responsible person under Sec. 6672. The district court granted Kolbe's motion, finding that he did not possess sufficient control over Helfrecht's finances to be considered a responsible person under Sec. 6672.
 
 II. General Principles
 
 3
 The Internal Revenue Code requires employers to withhold federal income and social security taxes from their employees' wages. Slodov v. United States, 436 U.S. 238, 243 (1978). An employer who fails to remit withheld sums is liable for the unpaid taxes. Congress enacted Sec. 6672[3] to allow the IRS to impose liability directly and individually on those persons responsible for the tax delinquency. Gephart v. United States, 818 F.2d 469, 473 (6th Cir. 1987) (per curiam). Liability under Sec. 6672 attaches when the following two factors are present: (1) the person is a "responsible person" under the statute, and (2) the person willfully failed to account for and pay over withholding taxes. McDermitt v. United States, 954 F.2d 1245, 1250 (6th Cir. 1992) (citing Gephart, 818 F.2d at 473).[4] Liability is predicated upon the existence of significant control of a corporation's finances. Kinnie v. United States, 994 F.2d 279, 283 (6th Cir. 1993).
 
 
 4
 The test for determining whether an individual is a responsible person focuses "upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." Gephart, 818 F.2d at 473. The relevant considerations in this analysis include:
 
 
 5
 (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation.
 
 
 6
 Id. None of the factors, however, is dispositive. Id. at 473-74. "The crucial examination is whether a person had the 'effective power to pay taxes."' Raba v. United States, 977 F.2d 941, 943 (5th Cir. 1992) (citation omitted); see also McDermitt, 954 F.2d at 1252.
 
 III. Principles Applied
 A.
 
 7
 The government first claims that the district court erroneously concluded that Sec. 6672 liability is limited to officers and employees of a corporation. We summarily reject this claim because it is an incorrect interpretation of the district court's opinion. Consistent with the teachings of Gephart, the district court explicitly recognized that corporate outsiders who exercised de facto control over corporate finances could be liable under Sec. 6672.
 
 B.
 
 8
 The government's claim that the district court erroneously found that the deposition testimony failed to establish a triable issue of fact, is without merit. We review the record de novo to determine whether the district court's decision to grant summary judgment was correct. McDermitt, 954 F.2d at 1250.
 
 
 9
 As a preliminary matter, this court rejects the government's initial assertion that summary judgment was inappropriate because an outside observer could have assumed that Kolbe was a Helfrecht employee. This speculation simply is immaterial to a Sec. 6672 analysis.[5] We also reject the government's contention that the deposition testimony creates sufficient evidence to defeat Kolbe's motion for summary judgment.
 
 
 10
 Applying the test for significant control, we note that the only evidence supporting the government's contention is a conclusory statement offered by McMillan, Jr.:
 
 
 11
 Q: Okay. It wasn't Mr. Kolbe's responsibility to make sure that the withholding deposits for Helfrecht got made; is that correct?
 
 
 12
 A: Under the day-to-day course of business it wasn't, until the point came when we didn't have the resources to do it. Then he assumed that responsibility by telling us don't worry about it, and he was the one from that week on that made the conscious decision not to pay them from week to week.
 
 
 13
 (J.A. at 157). Additionally, we note that the McMillans were still collecting their salaries at this point, and could have opted to make the payments to the IRS rather than continue to receive their salaries.
 
 
 14
 This court's careful review of McMillan Jr.'s deposition testimony reveals several contradictions. For example, McMillan Jr. testified that Kolbe demanded and was given complete financial control over Helfrecht as its financial consultant and that McMillan Sr. told him that Kolbe was to exclusively deal with the financial aspects of the company. (J.A. at 157, dep. at 111-12.) On the other hand, McMillan Jr. also testified that Kolbe did not have "complete and unfettered control over the financial affairs of the company," and that anyone's perception to the contrary would be incorrect. (J.A. at 133-34.) Moreover, McMillan, Jr. admitted that he could have chosen to pay the taxes, irrespective of any advice that Kolbe may have offered. (J.A. at 156-57, 159). In fact, he stated that he had the power and authority to disregard any of the financial advice Kolbe proffered. (Id. at 157). Further, McMillan Jr. also testified that he signed promissory notes without Kolbe's direction, and that Kolbe was not responsible for borrowing money or matters related to the line of credit. (See, e.g. J.A. at 125). Moreover, McMillan, Jr. testified that Kolbe was never a director, officer or employee of Helfrecht, and that the board of directors never passed a resolution resting financial control of the company to Kolbe. (Id.) Finally, McMillan Jr. testified that he could not even state that Kolbe had complete and unfettered control of company expenditures "because there did come a time when I, I guess, stepped up and made some decisions somewhat overruling him." (J.A. at 127).
 
 
 15
 The deposition of Helfrecht's purchasing agent, Peter Cesere, does not support the government's argument. Although Cesere testified that "someone" told him that Kolbe had final authority, he also testified that Kolbe did not control what Cesere could buy, or from whom he could make purchases. (J.A. at 91, 93-94).[6] Cesere testified that the extent of Kolbe's control was that he determined which accounts payable checks would be issued to a supplier. Nevertheless, Cesere also admitted that there never was a time when Kolbe did not follow his recommendations as to which vendor ought to be paid. (J.A. at 96).
 
 
 16
 Further, the uncontroverted evidence establishes the following facts: (1) Kolbe was not an officer, employee or director of Helfrecht; (2) he did not own any shares or hold an equity stake in Helfrecht; (3) he was retained as a financial consultant in return for compensation totalling $100,000; (4) he did not have authority to sign checks on behalf of the company; (5) he did not have authority to hire or fire employees; (6) Kolbe had no responsibility in the day-to-day management of the business; (7) Kolbe did not have authority to encumber Helfrecht's assets by obtaining a loan or seeking an increase in its line of credit; and (8) he did not have the ability to commit the company to an obligation or execute contracts on its behalf. McMillan Jr. exclusively dealt with the banks in connection with promissory notes, and notes, and lines of credit.
 
 
 17
 Given the contradictory and conclusory nature of McMillan Jr.'s testimony, this court finds that the proffered evidence is not significantly probative and cannot support a reasonable inference that Kolbe had sufficient control under Sec. 6672. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). When the above facts are viewed in the light most favorable to the government, this court finds that the district court properly granted summary judgment in favor of Kolbe. Kolbe has come forward with sufficient evidence to meet his burden of proving that he was not a responsible person under Sec. 6722. The government has failed to present sufficient evidence to create a factual question on this issue. There is no evidence in the record which suggests that when Kolbe was hired he was responsible for paying the payroll or the withholding taxes. Moreover, the mere fact that Kolbe told McMillan Jr. not to worry about the withholding taxes and that a payment plan could be worked out does not change the outcome in this case. Even assuming that McMillan Jr. took this advice to mean that Kolbe would be responsible for paying the withholding taxes in the future, nobody ever informed Kolbe that, based on this statement, he would be responsible for remitting the withholding taxes.
 
 
 18
 This, coupled with the undisputed facts that Kolbe was not an officer, employee, or director of Helfrecht, did not own any shares or hold an equity interest in Helfrecht, was retained as a financial consultant, did not have the authority to hire or fire employees, was not responsible for the day-to-day management of the business, did not have the authority to encumber Helfrecht's assets, and did not have the ability to commit the company to an obligation or execute contracts on its behalf, reveals that Kolbe did not have sufficient control over the disbursement of funds to render him a responsible person under Sec. 6722. This case is unlike Gephart, where the taxpayer had the authority to sign checks, was an employee and the general manager with the power to hire and fire employees. Therefore, the district court did not err in granting the motion for summary judgment.
 
 C.
 
 19
 The government's final claim of error is that the district court incorrectly held that an individual must possess complete control over the corporation's finances as a prerequisite for liability under Sec. 6672. The government argues that the district court placed undue importance on the fact that the McMillans possessed "veto power" over Kolbe's decisions. This objection is without merit. A review of the district court's opinion confirms that it recognized that the standard was not "complete or ultimate control," but "significant control." Acknowledging that no one factor or group of factors is controlling, the district court correctly concluded that Kolbe was not liable under Sec. 6672.
 
 IV
 
 20
 For the above stated reasons, the district court's decision granting summary judgment to Kolbe is AFFIRMED.
 
 
 21
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 22
 This is a close case, but I believe that the deposition testimony of Helfrecht Machine Company's executive vice-president, Donald McMillan, Jr., was sufficient to make out a genuine issue of fact as to the degree of influence and control that the company's financial consultant, Joseph Kolbe, exercised over the disbursement of corporate funds and the priority of payments to creditors. The extent of Kolbe's influence and control over these matters is highly material, under Gephart v. United States, 818 F.2d 469, 473 (6th Cir. 1987), and the entry of summary judgment against the government was thus inappropriate, in my view.
 
 
 23
 Mr. McMillan repeatedly testified that Mr. Kolbe offered his services to the company only on condition that he have complete control of the company's cash. The exact words that Kolbe used were "complete control of the cash," according to McMillan, and that was the only way Kolbe would take on the job. McMillan and his father (the company's president) accepted this condition, agreeing that "whatever he said we were going to do [as to disbursements], that's what was going to be done."
 
 
 24
 McMillan acknowledged that he had the power to overrule Kolbe, but he added that decision-making authority over disbursements had been delegated to Kolbe "and I respected that authority." It is consistent with this testimony that the man who served as controller of the company during the time that withholding taxes were not being paid was hired on Kolbe's advice and, according to McMillan, reported directly to Kolbe.
 
 
 25
 McMillan never recanted his testimony about Kolbe's insisting on complete control of the cash. When asked about an affidavit in which purchasing agent Peter Cesere spoke of "complete and unfettered control over the [company's] financial affairs," McMillan did say that he had not used those words in speaking to Cesere. "Unfettered" was not a term found in McMillan's everyday vocabulary, and McMillan did not consider "cash control" and "financial control" to be synonymous. Kolbe clearly did not have authority over corporate borrowing, for example, but that does not mean he lacked authority over cash disbursements -- and McMillan consistently maintained that Kolbe had such authority.
 
 
 26
 McMillan conceded that there were some types of disbursements (payroll expenditures, e.g.) that he and Kolbe never discussed, as far as he could remember. There might have been "an assumption on everybody's part that the paychecks would always go out," McMillan testified, but McMillan said that Kolbe "would never hesitate to let us know" if he felt a particular expenditure should not be made.
 
 
 27
 Although McMillan and Kolbe may not have discussed the payment of salaries and wages, McMillan testified that they did have "a somewhat lengthy discussion" on the payment of withholding taxes. McMillan said that the non-payment of taxes really bothered him, but Kolbe told him
 
 
 28
 "don't worry about it. He said that when the time comes, we'll negotiate with the IRS for a payment plan. They are not going to put a company who employs this many people out of business without ... negotiating to get repayment ...."
 
 
 29
 From that point on, according to McMillan, it was Kolbe who "made the conscious decision not to pay [the taxes] from week to week to week." Kolbe's lawyer suggested that "the decision wasn't within Mr. Kolbe's authority to make," but McMillan flatly disagreed. The decision was Kolbe's, McMillan testified, "because of the power that was vested to [sic] him on a verbal basis." Although it wasn't in writing, McMillan continued, "my perception was that ... he was the decision maker when it came to what monies were to be spent in any regard."
 
 
 30
 There came a time, McMillan said, when the company's outside auditor "basically put the fear of God in me" about the nonpayment of withholding taxes. The auditor was "quite upset" when he learned that the taxes were not being paid, and he pointed out that McMillan could be held personally liable for this obligation. McMillan then raised the subject with Kolbe again. Again, he testified, Kolbe told him not to worry:
 
 
 31
 "he basically told me that I shouldn't be overly concerned about that, that the IRS wasn't going to shut down a business, a going concern, that they would rather negotiate a payment plan and not put people out of work if they could avoid it."
 
 
 32
 Kolbe did not deny that McMillan could be held responsible for the liability himself, "but he felt that our best course of action still was to keep the business running."
 
 
 33
 Kolbe's position on the payment of withholding taxes, McMillan testified, was one of the factors that ultimately led to the company's dispensing with Kolbe's services. Kolbe thereafter made an offer to buy the company, interestingly enough, but the offer was not accepted.
 
 
 34
 It is true that Kolbe was never an officer, director, or employee of the company, and his position as financial consultant was always subject to termination. "It is well established," on the other hand, "that the test for determining the responsibility of a person under Sec. 6672 is essentially a functional one ...." Gephart, 818 F.2d at 473. I believe that a rational factfinder could conclude that the function performed by Kolbe with respect to the disbursement of corporate funds was essentially as McMillan described it -- and this, I think, would be enough to make Kolbe responsible under Sec. 6672. My colleagues on the panel having seen the matter differently, I respectfully dissent.
 
 
 
 [1]
 McMillan Sr. was Helfrecht's president and McMillan Jr. was the executive vice-president and general manager. Helfrecht retained Kolbe as an independent financial consultant
 
 
 [2]
 On October 11, 1991, a default judgment for $295,692.14 was entered against McMillan Jr
 
 
 [3]
 Section 6672(a) provides in pertinent part:
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
 
 
 [4]
 The word "person" is defined to include "an officer or employee of a corporation ... who as such officer or employee ... is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. Sec. 6671(b)
 
 
 [5]
 We also note that although the parties dispute whether Kolbe quit or was fired, resolution of this issue does not affect our analysis
 
 
 [6]
 McMillan Jr. testified that he never told Cesere that Kolbe had complete and unfettered control over company finances. (J.A. at 126)