**UNITED STATES of America, et al., Plaintiffs,**

v.

**PRODUCTION PLATED PLASTICS, INC., et al., Defendants.**

No. K87–138 CA.

United States District Court, W.D. Michigan.

May 14, 1990.

---

Thomas J. Gezon, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Elliot Eder, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Enforcement Section, Washington, D.C., Stuart Hersh, Asst. Reg. Counsel, William H. Merrill, Anna Thode, U.S. Environmental Protection Agency, Region V, Chicago, Ill., F. Henry Habicht, Asst. Atty. Gen., Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Mark S. Meadows, Steven E. Chester, Asst. Attys. Gen., Frank J. Kelley, Atty. Gen., Lansing, Mich., for plaintiffs.

Richard B. Tomlinson, Driggers, Schultz, Herbst & Paterson, Troy, Mich., Douglas W. VanEssen, Clary, Nantz, Wood, Hoffius, et al., Scott S. Brinkmeyer, William A. Horn, Mika, Meyers, Beckett & Jones, Grand Rapids, Mich., John H. Fildew, Lisa L. Harris, Fildew, Hinks, Gilbride, Miller, Detroit, Mich., for defendants.

Richard B. Tomlinson, Driggers, Schultz, Herbst & Paterson, Troy, Mich., Douglas W. VanEssen, Clary, Nantz, Wood, Hoffius, et al., Grand Rapids, Mich., for third-party plaintiff.

Howard T. Weir, Paul T. Sorensen, Warner, Norcross & Judd, Grand Rapids, Mich., Terrence J. Lilly, Lilly, Domeny & Byrne, Kalamazoo, Mich., Gregory G. Prasher, Schenk, Boncher & Prasher, Grand Rapids, Mich., Scott G. Johnson, Robins, Kaplan, Miller & Ciresi, Mel I. Dickstein, Minneapolis, Minn., Thomas C. Simpson, May,

Simpson & Strote, Bloomfield Hills, Mich., for third-party defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

### INTRODUCTION

Plaintiffs United States of America, Frank J. Kelley, Attorney General for the State of Michigan, the Michigan Natural Resources Commission, and Gordon E. Guyer, Director of the Michigan Department of Natural Resources (collectively the "government"), filed the present action for permanent injunctive relief and imposition of civil penalties against defendants Production Plated Plastics, Inc., Michigan City Plastics, Inc., Michael J. Ladney, Jr.,[1] and Marguerite Ladney, pursuant to Sections 3008(a) and (g) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6928(a) and (g), and Section 48 of the Michigan Hazardous Waste Management Act ("HWMA"), M.C.L.A. § 299.548. Plaintiffs allege that defendants operated a hazardous waste facility and stored and disposed of hazardous waste at defendant's Richland, Michigan facility ("PPP facility") in violation of RCRA and HWMA.

More specifically, Count 1 of plaintiffs' complaint alleges violations of Section 3005(a) and (e) of RCRA, 42 U.S.C. § 6925(a) and (e), and the RCRA regulations, 40 C.F.R. Part 265, by discharging hazardous waste into unlined surface impoundments and by operating waste piles without an RCRA permit or RCRA interim status. Count 2 alleges a violation of Section 3005(e) of RCRA, 42 U.S.C. § 6925(e), and the RCRA regulations, 40 C.F.R. § 265.112, by failing to submit a closure plan for the surface impoundments and waste piles within 15 days after termination of the interim status, and by failing

to commence or complete closure in a timely manner. Count 3 alleges a violation of Section 3005(e) of RCRA, 42 U.S.C. § 6925(e), and the RCRA regulations, 40 C.F.R. § 265.118, by failing to submit a post-closure plan for the surface impoundments and an adequate post-closure plan for waste piles. Count 4 alleges a violation of Sections 6 and 22 of HWMA, M.C.L.A. §§ 299.506, .522, for the continued operation of an unlicensed hazardous waste storage and disposal facility.[2]

Presently pending before the Court is plaintiffs' motion for partial summary judgment as to the issues of defendants Production Plated Plastics, Inc.'s and Michael J. Ladney's liability under RCRA and HWMA pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, plaintiffs' motion for partial summary judgment is granted.

### FACTS

Defendant Production Plated Plastics, Inc. ("PPP") is a corporation which has engaged in molding, electroplating, and painting of plastic parts primarily for the automotive industry since commencing operations in 1966. The manufacturing processes involve creation, discharge, and storage of hazardous wastes.

In 1977, the Michigan Department of Natural Resources ("MDNR") filed an action in state court against PPP seeking to enjoin PPP from discharging wastes and seeking to order PPP to remove wastes pursuant to the Water Resources Commission Act, M.C.L.A. §§ 323.1 *et seq.* The state court entered a consent order in 1978 requiring PPP to remove sludge and to install and operate purge wells. Subsequent modifications of the order specified the minimum amounts of sludge PPP was required to remove per month as part of

---

**1.** Unless otherwise indicated, references to "Ladney" refer to defendant Michael J. Ladney, Jr., and not to defendant Marguerite Ladney.

**2.** HWMA authorizes the continued operation of a facility that was in existence on the effective date of the 1982 Act, March 30, 1983, if certain conditions were met. One of the conditions is

compliance with the federal solid waste disposal act regulations, 42 U.S.C. §§ 6901 *et seq.* M.C.L.A. § 299.522(6)(c). An owner or operator of a hazardous waste facility in Michigan is required to comply with RCRA and HWMA, administered by both the EPA and the State of Michigan. *See* 42 U.S.C. §§ 6926, 6928(a)(2).

remediation and ordered other remediation procedures.

On August 18, 1980, pursuant to newly enacted RCRA requirements, defendants provided the Environmental Protection Agency ("EPA") a "Notification of Hazardous Waste Activities," listing specific hazardous wastes that were generated, treated, stored, and disposed of at the PPP facility. The notification form listed Michael J. Ladney, Jr., as the "Installation's Legal Owner." PPP also provided the EPA with a Part A permit application for permission to continue to treat, store or dispose of hazardous wastes at the PPP facility. Submission of the Part A application automatically granted PPP interim status to continue operations pending review of their application. *See* 42 U.S.C. § 6925(e)(1); 40 C.F.R. § 270.70(a). The Part A application listed Ladney as the facility's owner and operator and was signed by Ladney. PPP submitted a revised Part A application on or about January 17, 1985, changing the facility's legal owner to "Production Plated Plastics, Inc."

In July 1984, PPP submitted a Part B permit application. In February and October of 1985, the EPA notified PPP of deficiencies in the second part of their application. PPP acknowledged, by letters dated November 5, 1985, and November 20, 1985, that it could not meet the RCRA financial responsibility requirements, although it claimed a good faith effort to obtain insurance. Nonetheless, PPP continued to discharge hazardous waste. However, on July 16, 1986, the Associate Regional Counsel for the EPA wrote a letter to PPP stating that the "EPA will approve the rate of removal of waste proposed in the closure plan that is in accordance with the order of the Kalamazoo County Circuit Court."

PPP filed a "Piled and Buried Sludge Closure" plan and subsequent revisions with the EPA on March 26, 1986, October 14, 1986, and July 29, 1987. PPP also filed a "Tentative Surface Impoundment Closure Plan" and subsequent revisions with the EPA on May 20, 1986, February 25, 1987, and on August 12, 1987. On September 30, 1988, the State of Michigan apparently approved the proposed closure plans. It is not clear to what extent PPP has complied with such plans to date.

## STANDARD FOR REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, by viewing the evidence in favor of the non-moving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Boddy v. Dean*, 821 F.2d 346, 349 (6th Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Potters Medical Center v. City Hospital Association*, 800 F.2d 568, 572 (6th Cir.1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

## APPLICABLE LAW & ANALYSIS

RCRA was enacted as an amendment to the Solid Waste Disposal Act in an attempt by Congress to deal with problems posed by the general disposal of wastes in this country as well as the particular problems associated with the disposal of hazardous

substances. Pub.L. No. 94–580, 1976 U.S. Code Cong. & Admin.News (90 Stat.) 2795, 2798; H.R.Rep. No. 1491, 94th Cong., 2d Sess., pt. 1, at 2–5, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6238, 6239–43. The Act, amended three times since its initial enactment,[3] authorizes the EPA to identify hazardous wastes, to promulgate standards for operators of hazardous waste facilities, and to issue permits for the operation of hazardous waste disposal facilities. *See* 42 U.S.C. §§ 6921–25. Under the Act, a civil suit may be brought against "any person ... who has contributed or who is contributing to such handling, storage, treatment, transportation, or disposal." 42 U.S.C. § 6973(a). RCRA is a remedial strict liability statute which is construed liberally. *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1383 (8th Cir.1989); *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 738 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

The 1980 amendments to RCRA, effective November 19, 1980, required each owner and operator of a "facility for the treatment, storage, or disposal of hazardous waste" to obtain a permit. 42 U.S.C. § 6925(a). However, facilities in operation at the time of enactment of the permit requirement were granted interim status in order to operate without an RCRA permit pending administrative action on the permit application. 42 U.S.C. § 6925(e).

In 1984, RCRA was amended to terminate interim status if certain conditions were not satisfied. The 1984 amendment provides that:

In the case of each land disposal facility which has been granted interim status under this subsection before November 8, 1984, interim status shall terminate on the date twelve months after November 8, 1984, unless the owner or operator of such facility—

(A) applies for a determination regarding the issuance of a permit under subsection (c) of this section for such facility before the date twelve months after November 8, 1984; and

(B) certifies that such facility is in compliance with all applicable groundwater monitoring and financial responsibility requirements.

42 U.S.C. § 6925(e)(2). Thus, under this section, a facility was required to submit a Part B permit application certifying compliance with applicable groundwater monitoring and financial responsibility requirements before November 8, 1985. If the facility failed to satisfy the above conditions, interim status was lost as of November 8, 1985. 42 U.S.C. § 6925(e)(2)(A); 40 C.F.R. § 270.73; 50 Fed.Reg. 38946, 38946–49 (Sept. 25, 1985); 50 Fed.Reg. 28701, 28723–24 (July 15, 1985). Further, if the hazardous waste treatment storage and disposal facility lost its interim status, the owner or operator of the facility was required to submit a closure plan and post-closure plan to the EPA within fifteen days of the termination of interim status and to complete partial and final closure activities within 180 days after the EPA's approval of the closure plan. *See* 40 C.F.R. §§ 265.-112(d)(3)(i), 265.118(e)(1), 265.113(b).

The government has the initial responsibility of establishing the absence of a material issue of fact for trial regarding RCRA and HWMA liability. The government has established that PPP is the owner or operator of a hazardous waste facility which stored and disposed of waste both before and continuing after November 19, 1980. Thus, under the 1980 amendments, PPP automatically was granted interim status with the submission of its Part A application. However, PPP failed to certify compliance with the financial responsibility requirements mandated by the 1984 amendments, failed to obtain an RCRA permit, and failed to meet RCRA deadlines for

---

**3.** The initial statute was amended by the Quiet Communities Act of 1978, Pub.L. No. 95–609, § 7, 1978 U.S.Code Cong. & Admin.News (92 Stat.) 3079, 3081–84, 1978 U.S.Code Cong. & Admin.News 7569; Solid Waste Disposal Act Amendments of 1980, Pub.L. No. 96–482, 1980 U.S.Code Cong. & Admin.News (94 Stat.) 2334, 1980 U.S.Code Cong. & Admin.News 5019; Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98–616, 1984 U.S.Code Cong. & Admin.News (98 Stat.) 3221, 1984 U.S.Code Cong. & Admin.News 5576.

having permitted land disposal units and adequate underground monitoring. Thus, as a matter of law, PPP lost interim status as of November 8, 1985. *See United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 738 (8th Cir. 1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Nonetheless, PPP continued its waste activities. Furthermore, defendants failed to submit required closure and post-closure plans within the appropriate time periods. Accordingly, plaintiffs have established a *prima facie* case of liability.

Plaintiffs having established a *prima facie* case of liability, the Court next must consider defendants PPP's and Ladney's defenses in order to determine whether summary judgment with regard to liability is appropriate. In attempts to avoid liability and in opposition to partial summary judgment, PPP and Ladney deny violating RCRA and HWMA, arguing that compliance with the state court ordered remediation closure plan complies with the intent and requirements of RCRA and HWMA and was accepted by the EPA, that plaintiffs are estopped from seeking a closure plan inconsistent with the state plan, that defendants' inability to comply with the financial responsibility requirements of RCRA regulations excuses lack of compliance, and that plaintiffs have selectively enforced this action against them in violation of equal protection and due process.

## A. COMPLIANCE WITH STATE PLAN/ESTOPPEL

■ As their first defense, defendants argue that timely filings with the EPA and compliance with the state court ordered lagoon closure plan satisfy the intent of RCRA. Defendants urge the Court to review the provisions of the state court closure plan in light of RCRA's objectives and

the impact on such plan if PPP was forced to cease operations due to its inability to meet the financial responsibility requirements. Further, defendants argue that representations by the EPA that the state closure plan was acceptable to the EPA estops the EPA from bringing the present enforcement action.

After conducting a complete review of the file, record, and prior proceedings in this matter, the Court concludes that the consent judgment in state court does not relieve PPP of obligations under RCRA. The Court finds no authority for the proposition that compliance with a state remedial order excuses an RCRA violation. The Court recognizes the frustration underlying defendants' arguments, but finds that the state court proceedings do not change the fact that they have violated RCRA. Rather, defendants' arguments may be considered in fashioning an appropriate remedy. Furthermore, the Court does not believe that the EPA letter dated July 16, 1986 excuses liability, although again such fact may be relevant when appropriate damages and/or penalties are assessed.[4]

Accordingly, the Court concludes that defendants' first defenses do not excuse defendants from liability for RCRA and HWMA violations.

## B. INABILITY TO SATISFY FINANCIAL RESPONSIBILITY REQUIREMENT

■ Next, relying on *United States v. T & S Brass & Bronze Works, Inc.*, 681 F.Supp. 314 (D.S.C.1988), defendants apparently argue that since it was impossible for them to satisfy the financial responsibility requirements, they are excused from complying with RCRA requirements. However, the Court notes that in *T & S Brass*, although not controlling authority over this

---

**4.** The Court notes that as a general rule equitable defenses such as estoppel are not available against the sovereign when it is asserting public rights. *See, e.g., Costello v. United States*, 365 U.S. 265, 281, 81 S.Ct. 534, 542–43, 5 L.Ed.2d 551 (1961); *Pan American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 506, 47 S.Ct. 416, 424, 71 L.Ed. 734 (1927); *Chesapeake & Delaware Canal Co. v. United States*,

250 U.S. 123, 125, 39 S.Ct. 407, 407–08, 63 L.Ed. 889 (1919). "Where the defenses of unclean hands or laches have been used against the government when it is asserting public rights, courts have repeatedly held that equitable principles will not be applied to thwart public policy or the purpose of federal laws." *Kelley v. Thomas Solvent Co.*, 714 F.Supp. 1439, 1451 (W.D.Mich.1989).

Court's disposition of the matter, the district court held that neither T & S Brass' argument that it made a good faith attempt to obtain insurance nor that insurance was impossible to obtain were sufficient defenses. On appeal, the Fourth Circuit, affirming in part and vacating in part, also rejected the impossibility defense. *United States v. T & S Brass & Bronze Works, Inc.*, [865 F.2d 1261, (table) ] No. 88–3531, slip op. at 4 (4th Cir. Dec. 22, 1988) (per curiam) (unpublished).

After reviewing the facts of this case and the existing caselaw, the Court concludes that neither an impossibility defense nor good faith efforts to secure financial assurances are defenses to liability after November 8, 1985, although such efforts are pertinent to the appropriate remedies or imposition of sanctions. *See United States v. Clow Water Systems, A Division of McWane, Inc.*, 701 F.Supp. 1345, 1348 (S.D.Ohio 1988); *United States v. Allegan Metal Finishing Co.*, 696 F.Supp. 275, 285 (W.D.Mich.1988); *T & S Brass & Bronze Works*, 681 F.Supp. at 321. Thus, the Court concludes that this defense also does not preclude a finding of liability.

## C. SELECTIVE ENFORCEMENT

■ Finally, defendants argue that this action is constitutionally invalid since the government has selectively enforced RCRA and HWMA against defendants in bad faith or arbitrarily while others similarly situated have not been prosecuted. Defendants argue that the site at issue, which is a compliant company on a non-dangerous site, does not appear on the MDNR's list of hazardous waste sites requiring remediation, while many dangerous sites on the list have not been subjected to enforcement actions.

The government generally is afforded a presumption of validity in the enforcement of federal statutes and its discretion in enforcing federal statutes is extremely broad, although not unfettered. *See Wayte v. United States*, 470 U.S. 598, 607–10, 105 S.Ct. 1524, 1530–32, 84 L.Ed.2d 547 (1985); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962).

In order to state a *prima facie* selective prosecution defense, defendants bear a heavy burden of establishing that (1) defendants have been singled out while other similarly situated violators were left untouched, and (2) that the government selected defendants for prosecution "invidious[ly] or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of [their] constitutional rights." *United ed States v. Bustamante*, 805 F.2d 201, 202 (6th Cir.1986); *United States v. Hazel*, 696 F.2d 473, 474 (6th Cir.1983).

The Court finds no proof of selective prosecution other than defendants' mere allegations and arguments in their brief which are not sufficient to raise an issue of material fact. Defendants have provided no proof that similarly situated violators have not been cited for RCRA violations. Furthermore, even if defendants had satisfied the first element of a selective enforcement defense, there also is no evidence of governmental vindictiveness, that the selection was based on race, religion or some other arbitrary classification which would support finding a denial of equal protection, or that the government engaged in intentional, purposeful discrimination which would meet defendants' heavy burden of establishing a *prima facie* case of selective enforcement. As a result, the Court finds that defendants' selective enforcement defense does not preclude summary judgment as a matter of law.

Accordingly, since defendants have failed to present a valid defense to liability, summary judgment solely on the issue of liability is appropriate in favor of plaintiffs and against defendant PPP.

## D. INDIVIDUAL LIABILITY UNDER RCRA

■ Since the Court has determined that defendant PPP is liable for violations of RCRA and HWMA, the Court must determine whether a question of fact exists regarding whether defendant Ladney is jointly liable for such violations. An action alleging violations of RCRA may be brought against "any person (including any

past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility)." 42 U.S.C. § 6973(a). Thus, corporate officers and employees who actually make corporation decisions are personally liable under RCRA. *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 745 (8th Cir.1986).

In their complaint, plaintiffs allege that Ladney is the owner or operator of PPP. Defendants dispute plaintiffs' allegations and argue that plaintiffs must be able to prove that Ladney plays an active role in controlling the waste management policies and practices of PPP in order to hold Ladney personally liable for the alleged violations. However, although defendants do agree that Michigan City Plastics, Inc. ("MCP") owns PPP and that Ladney owns 68% of MCP's stock, defendants contend that there is no evidence that Ladney actively controls MCP or plays an active role in controlling the waste management policies and practices of PPP.

Plaintiffs respond that Ladney's name appears as the "Installation's Legal Owner" on the initial "Notification of Hazardous Waste Activities" and on the Part A application. However, the Court notes that the revised Part A application substituted "Production Plated Plastics, Inc." as the legal owner of the facility. Plaintiffs also contend that in his deposition, William Evans, PPP's plant manager, stated that he frequently discussed the manufacturing of products with Ladney.

In its review of the parties' briefs and attachments, the Court notes that defendants have submitted various documents and depositions which in fact provide evidentiary support that Ladney is personally involved in or directly responsible for acts in violation of RCRA and HWMA. Defendants have submitted the deposition of Steven D. Noble, an environmental specialist for PPP. Noble states that Ladney is a corporate officer of PPP who is in daily contact with William Evans. Defendants also have submitted the affidavit of Ladney, as president of PPP, which states that he is competent to testify as to the facts of

this case and in which he asserts decision-making authority. Finally, defendants have submitted a letter from Ladney, written in his capacity as president of PPP, outlining PPP's long-term plan of operations.

The Court, viewing the evidence submitted in the light most favorable to the nonmoving party and drawing all reasonable inferences, finds that the evidence shows that Ladney was actively involved in the day-to-day operations of PPP. Defendants assert in their briefs that plaintiffs have not established that Ladney was actively involved in the operations of PPP. However, defendants provide no evidence that Ladney is not PPP's owner or operator. Defendants offer no explanation of the statements made in Ladney's affidavit which indicate that he is the ultimate decision-making authority, or how, as president of PPP, he is to be excluded from the natural and reasonable inference that he had an important say in or actually made the corporate decisions. Accordingly, the Court holds Ladney jointly liable with PPP for RCRA and HWMA violations.

## CONCLUSION

The Court concludes that no genuine issue of material fact exists with regard to defendants PPP's and Ladney's liability, thus plaintiffs are entitled to judgment as a matter of law. In reaching its decision, the Court has not considered the appropriateness of civil penalties and/or injunctive relief. Although PPP and Ladney have been found liable as a matter of law, the issue of appropriate remedies and/or penalties will be considered in light of the state court orders and in conjunction with defendants' various defenses.

The Court recognizes that this is a unique case. Although RCRA and HWMA requirements have not been met and defendants are liable for RCRA and HWMA violations, the Court encourages continual attempts by the parties to resolve this matter and notes that it will consider factors such as the state court proceedings and steps taken pursuant to such proceedings

when fashioning the appropriate relief warranted.