61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, and Frank J. Kelley, Attorney
General for the State of Michigan ex rel. Michigan Natural
Resources Commissioner, and Gordon E. Guyer, Director of the
Michigan Department of Natural Resources, Plaintiffs-Appellees,
v.
PRODUCTION PLATED PLASTICS, INC., Michigan City Plastic Co.,
Inc., and Michael J. Ladney, Jr., Defendants-Appellants.
 Nos. 93-2055, 93-2618.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1995.
 
 Before: JONES, CONTIE, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 In case No. 93-2055, Defendants Production Plated Plastics, Inc. ("PPP"), Michigan City Plastic Co. ("MCP"), and Michael J. Ladney, Jr. are appealing the district court's adverse decision to impose permanent injunctive relief and a civil penalty in an environmental enforcement action brought by the Plaintiffs United States and the State of Michigan pursuant to sections 3008(a) and (g) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Sec. 6928 (1988), and section 48 of the Michigan Hazardous Waste Management Act ("MHWMA"), Mich.Comp.Laws Ann. Sec. 299.548 (West 1984). The impetus for the enforcement action was the Defendants alleged failure to comply with federal and state laws governing the proper management of hazardous waste at a treatment, storage, and disposal ("TSD") facility that the Defendant owned in Richland, Michigan. The Defendants raise the following issues for review: (1) whether the district court properly exercised its discretion by imposing a $1.5 million civil penalty on the Defendants, jointly and severally, for violations of RCRA, MHWMA, and related regulations; (2) whether the district court erred in failing to reduce the civil penalty to reflect the Plaintiff State of Michigan's settlement with Defendant Marguerite Ladney, the former wife of Defendant Michael Ladney; and (3) whether the district court erred in requiring Defendants to comply with the RCRA/MHWMA regulations for the creation of a trust fund which will pay the costs for groundwater monitoring during the thirty-year period following the closure of Defendant's hazardous waste facility.
 
 
 2
 In case No. 93-2618, the Defendants are appealing the decision of the district court to appoint a third-party trustee to expeditiously liquidate whatever assets were needed to achieve compliance with the Court's injunction. The Defendants claim that the district court lacked the judicial authority or abused its discretion to appoint a trustee/receiver to assist the court in securing Defendants' obedience with the court's order.
 
 
 3
 We affirm the district court's decisions in both cases.
 
 I.
 
 4
 We need not address the facts of this case or synopsize the scheme of the applicable environmental statutes because the district court has ably accomplished both of these tasks in two previous decisions, United States v. Production Plated Plastics, Inc., 742 F.Supp. 956 (W.D.Mich.1990) ("PPP I") and United States v. Production Plated Plastics, Inc., 762 F.Supp. 722 (W.D.Mich.1991) ("PPP II"). Instead, we turn to the procedural history of the case because it establishes the context for the present appeals.
 
 
 5
 This lawsuit has a lengthy procedural history. Initially, on May 14, 1990, the district court determined that the Defendants operated a hazardous waste facility and stored hazardous waste at PPP, an electroplating plant in Richland, Michigan, in violation of RCRA and MHWMA. Awarding partial summary judgment to the Plaintiffs, the district court found the Defendants jointly and severally liable under federal and state environmental statutes. PPP I, 742 F.Supp. at 963.
 
 
 6
 On January 24, 1991, the district court, again, awarded partial summary judgment to the Plaintiffs and issued a permanent injunction enjoining the Defendants to comply with the hazardous waste laws by implementing the terms of a 1988 closure plan approved by the Michigan Department of Natural Resources ("MDNR"). PPP II, 762 F.Supp. at 733. That order was later revised to account for the submission by Defendants and approval by MDNR of an amended closure plan. J.A. at 131. This court affirmed both district court decisions in an unpublished opinion, United States v. Production Plated Plastics, Inc., No. 91-1728 (6th Cir. Feb. 20, 1992) (per curiam), cert. denied, 113 S.Ct. 67 (1992).
 
 
 7
 PPP II left four issues for resolution at trial: (1) whether an injunction should issue against Defendants requiring them to comply with the groundwater monitoring requirements of 40 C.F.R. Part 265 Subpart F; (2) whether an injunction should issue against Defendants requiring them to provide financial assurances for closure and post-closure in accordance with 40 C.F.R. Secs. 265.143 and 265.145; (3) whether an injunction should issue against Defendants requiring them to comply with the financial responsibility (liability) requirements of 40 C.F.R. Sec. 265.147; and (4) whether, and in what amount, a civil penalty should be assessed against Defendants pursuant to 42 U.S.C. Sec. 6928(g). J.A. at 131. The first issue left for trial was resolved by the court's Revised Order of Permanent Injunction, which required Defendants to undertake the groundwater monitoring required by RCRA and included in their amended closure plan. Another issue for trial arose, however, in that the Defendants failed to comply with the district court's Revised Order of Permanent Injunction.
 
 
 8
 The district court proceeded to trial on the remaining issues and on September 4, 1992, after a two-week trial, the court ordered the Defendants to do the following: (1) achieve complete closure of the Richland facility pursuant to all terms of the approved closure plan within ninety days; (2) comply with post-closure requirements as set forth in 40 C.F.R. Part 265 and analogous Michigan regulations; (3) provide financial assurance for performance of the closure obligations and post-closure obligations; (4) implement and comply with the alternate groundwater monitoring program approved in the Revised Order of Permanent Injunction; and (5) utilize best efforts to obtain the required financial liability coverage. J.A. at 150-51. The court also held that if the Defendants were not in compliance with the court-ordered injunctive relief within ninety days, the court would appoint a trustee to "manage all the business affairs of the defendants and ... to expeditiously liquidate whatever assets are needed to achieve compliance with the Court's injunction." J.A. at 152-53.
 
 
 9
 Finally, because of the Defendants refusal to comply with RCRA and MHWMA, the court imposed a civil penalty of $1.5 million, which the court found was "in line with those imposed in numerous other environmental cases." J.A. at 148. The Defendants raised an Eighth Amendment defense to the assessment of the civil penalty, and they also averred that the penalty should have been offset by $60,000, which Ladney's ex-wife paid the Plaintiffs in settlement of their lawsuit against her arising from these same circumstances. J.A. at 147-48. The district court held that the fine was not per se unconstitutional and that it was not excessive. J.A. at 148. Regarding Mrs. Ladney, the court refused to pro rata reduce Defendants' penalty to account for her settlement with the Plaintiffs because she was never adjudicated to be liable for the RCRA violations and because the Ladney's judgment of divorce required Mr. Ladney to hold Mrs. Ladney harmless for the pollution problem at the Richland facility. Id. at 148-49.
 
 
 10
 After the district court's ruling of September 4, 1992, the Defendants did not liquidate sufficient assets to finance the remaining compliance activities within ninety days. Thus, on December 10, 1993, the district court designated a third-party trustee to identify selected assets, to marshall and liquidate those assets, and to deposit the proceeds into an Escrow Trust Fund from which the work necessary to comply with the injunction would be paid. J.A. at 191. These appeals followed.
 
 II. Imposition of Civil Penalty
 
 11
 As an introductory matter, the Defendants note that they are not only contesting the district court's decision to impose joint and several liability for the civil penalty but they are also rechallenging the district court's earlier finding of joint and several liability for RCRA compliance in PPP I. PPP Br. at 9 n. 2, 44-45. This court previously decided the latter issue on appeal in a per curiam opinion. United States v. Production Plated Plastics, Inc., No. 91-1728 (6th Cir. Feb. 20, 1992). Accordingly, we find that the law of the case doctrine precludes reconsideration of this issue. Coal Resources, Inc. v. Gulf & Western Indus., Inc., 954 F.2d 1263, 1265 (6th Cir.1992) (citing Coal Resources, Inc. v. Gulf & Western Indus., Inc., 865 F.2d 761, 767 (6th Cir.1989) (quoting Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 657 (Fed.Cir.), cert. denied, 474 U.S. 902 (1985)).
 
 
 12
 With regard to the district court's decision to impose on the Defendants a $1.5 million RCRA civil penalty, jointly and severally, the Defendants argue that the district court abused its discretion because the decision violated the Fifth Amendment (Due Process Clause) and the Eighth Amendment (Excessive Fines Clause) and because the court based its assessment on clearly erroneous factual findings. The assessment of a civil penalty under RCRA is "committed to the sound discretion of the trial court, and will be reversed only upon a showing that the district court abused its discretion." United States EPA v. Environmental Waste Control, Inc., 917 F.2d 327, 335 (7th Cir.1990) (citing United States v. ITT Continental Baking Co., 420 U.S. 223, 229 n. 6 (1975)), cert. denied, 499 U.S. 975 (1991).
 
 A. Due Process Argument
 
 13
 The Defendants claim that case law explaining the requirements of the Fifth Amendment Due Process Clause implies that a court should analyze behavior individually, instead of jointly and severally, when assessing a penalty sought by the government, which amounts to punishment. PPP Br. at 10 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986); Solem v. Helm, 463 U.S. 277, 293 (1983)). The Defendants' efforts to constitutionalize this issue are novel, evidenced by the fact that the cases that the Defendants cited in support do not even remotely discuss the issue in this case. On the other hand, the Defendants admit that several courts have imposed joint and several liability for RCRA civil penalties pursuant to 42 U.S.C. Sec. 6928(g). PPP Br. at 10 n. 3 (citing United States EPA v. Environmental Waste Control, Inc., 710 F.Supp. 1172, 1245 (N.D.Ind.1989), aff'd, 917 F.2d 327 (7th Cir.1990), cert. denied, 499 U.S. 975 (1991); United States v. Vineland Chemical Co., 31 Env't Rep.Cas. (BNA) 1720 (D.N.J.1990), aff'd, 931 F.2d 52 (1991)).
 
 
 14
 Even assuming the possibility that a court's evaluation of the relevant factors for imposition of a civil penalty, see United States v. T & S Brass & Bronze Works, Inc., 681 F.Supp. 314, 322 (D.S.C.), aff'd in part, 865 F.2d 1261 (4th Cir.1988), could lead it, in the face of meaningful differences, to tailor the penalty for each individual RCRA violator, we do not believe such a determination would have been appropriate in this case. The district court found that PPP and MCP were part of a group of companies that was largely owned and completely controlled by Ladney "as a single corporate entity." J.A. at 132. Ladney's personal assets were "commingled" with those of his corporations, and assets within the corporate group "were channeled wherever they were needed without regard to corporate form." Id. Although the Defendants contest the district court's factual findings, the district court's conclusion that the Defendants functioned as one entity was clearly permissible, based on the evidence. Thus, the court did not abuse its discretion and violate the Due Process Clause when it imposed joint and several liability on the Defendants for the civil penalty.
 
 B. Excessive Fines Argument
 
 15
 The Defendants also claim that the civil penalty of $1.5 million for their RCRA violations is excessive and thus violative of the Eighth Amendment. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.
 
 
 16
 The district court noted that prior case law had delineated a set of factors that aid a court in determining whether it is appropriate to impose a RCRA civil penalty and if so, how much. J.A. at 145-46; see United States EPA v. Environmental Waste Control, Inc. ("EWC"), 710 F.Supp. 1172, 1242-45 (N.D.Ind.1989), aff'd, 917 F.2d 327 (7th Cir.1990), cert. denied, 499 U.S. 975 (1991); T & S Brass & Bronze Works, Inc., 681 F.Supp. at 322. Moreover, the court recognized that RCRA provided for a civil penalty in amount not to exceed $25,000 for each day of violation, 42 U.S.C. Sec. 6928(g). J.A. at 145. After applying these factors to this case, the district court determined that a civil penalty of $1,500,000, which was less than $400 per day of violation, was appropriate. J.A. at 146. The district court noted that the Defendants had raised an Excessive Fines Clause defense to the penalty, and after comparing the amount of this penalty with the civil penalties imposed in other environmental cases, the court determined that the penalty was not excessive. J.A. at 147-48; see also EWC, 710 F.Supp. at 1245 (imposing RCRA civil penalty of $2,000 per day for total of $2,778,000 when penalties totalling over $60,000,000 could have been rendered); T & S Brass, 681 F.Supp. at 322 (imposing RCRA civil penalty of $1,000 per day for total of $194,000 when penalties totalling $4,850,000 could have been rendered).
 
 
 17
 Assuming without holding that a RCRA civil penalty is subject to the Excessive Fines Clause, see Austin v. United States, 113 S.Ct. 2801, 2805-06 (1993); Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 266-68 (1989), and recognizing that a reviewing court should afford deference to legislative judgments concerning appropriate sanctions for the conduct at issue, see Browning-Ferris Indus., 492 U.S. at 281 (Brennan, J., concurring); id. at 301 (O'Connor, J., concurring in part and dissenting in part), we conclude that the district court did not impose an excessive civil penalty on the Defendants for their RCRA violations. Given that the Defendants were potentially in violation of RCRA for over 3,900 days and given that a maximum statutory penalty would have totalled over $90,000,000 dollars, we do not think the district court's $1,500,000 civil penalty was excessive.
 
 C. Erroneous Factual Findings
 
 18
 Finally, the Defendants claim that the district court abused its discretion in assessing this penalty because it based the penalty on clearly erroneous factual findings. PPP Br. at 25. After reviewing the district court's factual findings, we find that they were clearly permissible and supported by the facts. Thus, we find that the district court did not abuse its discretion in imposing this civil penalty, jointly and severally, on the Defendants for their RCRA violations.
 
 III. Failure to Reduce Civil Penalty
 
 19
 Next, the Defendants contend that the district court erred in refusing to reduce its civil penalty assessment by $60,000, the amount of a prior settlement between the State of Michigan and Marguerite Ladney, Michael Ladney's former wife. The district court determined that it was not obliged to reduce the amount of the civil penalty because, unlike the Defendants, Mrs. Ladney was never adjudicated to be liable for the RCRA violations at issue. J.A. at 148. Furthermore, the court relied on the Ladneys' divorce decree, which required Mr. Ladney to hold Mrs. Ladney harmless for the pollution problem at the Richland facility. Id.
 
 
 20
 The Defendants rely on case law that is misleading, and their argument is meritless. They only cite cases involving a cost recovery or contribution under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9601, but not a civil penalty assessment. See PPP Br. at 41 (citing United States v. Laskin, No. C84-2035Y, 1989 WL 140230 (N.D.Ohio Feb. 27, 1989); Edward Hines Lumber Co. v. Vulcan Materials Co., 669 F.Supp. 854 (N.D.Ill.1987); United States v. Conservation Chemical Co., 628 F.Supp. 391, 400 (W.D.Mo.1985), order modified by, 681 F.Supp. 1394 (W.D.Mo.1988)). These cases are inapposite to a RCRA civil penalty assessment. In the different context of CERCLA cost recovery actions, Congress logically specified a reduction in "the potential liability of the others by the amount of the settlement." 42 U.S.C. Sec. 9613(f)(2). No analogous provision, however, exists under RCRA. Furthermore, these cases relate to reimbursement liability for the out of pocket response costs incurred by the government for responding to contamination. Such a case is irrelevant to the broad discretion judges have in assessing civil penalties under RCRA.
 
 
 21
 We hold that the district court did not abuse its discretion in refusing to reduce the Defendants' RCRA civil penalty by the amount of Mrs. Ladney's settlement with the State of Michigan.
 
 IV. Groundwater Monitoring Trust Fund
 
 22
 The Defendants contend that the district court erred in directing the Defendants to establish a groundwater monitoring trust fund, when no such relief was sought in the Complaint. PPP Br. at 43. This claim reflects the Defendants unfamiliarity with the Complaint and the federal regulations.
 
 
 23
 We review judgments granting a permanent injunction under an abuse of discretion standard. Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir.1994); Loschiavo v. City of Dearborn, 33 F.3d 548, 553 (6th Cir.1994) (citing Crane by Crane v. Indiana High Sch. Athletic Ass'n, 975 F.2d 1315, 1326 (7th Cir.1992) ("Our review of the district court's decision to grant a permanent injunction 'is limited to the determination of whether the district court abused its discretion in deciding that the circumstances of the case justified injunctive relief.' ")).
 
 
 24
 Groundwater monitoring is an essential element of any post-closure plan as set forth in 40 C.F.R. Sec. 265.117(a)(1) and 40 C.F.R. Part 265 Subpart F (encompassing 40 C.F.R. Secs. 265.90-.94). Section 265.117(a)(1) prominently mandates compliance with all Subpart F groundwater monitoring requirements. This post-closure plan obligation is pled in paragraph 17 of the Complaint with specific reference to 40 C.F.R. Sec. 265.117. J.A. at 55. The Defendants' failure to meet this obligation is pled in paragraphs 34, 38, and 52 of the Complaint. Thus, the Defendants' charge that groundwater monitoring relief was not sought in the Complaint is meritless.
 
 
 25
 The Defendants also argue that the district court erred in ordering $2.4 million to be placed in a groundwater monitoring trust fund because this figure ignored the time value of money and thus was irrational. PPP Br. at 44. Defendants' claim, however, again ignores the clear and unambiguous language of a RCRA regulation. Specifically, 40 C.F.R. Sec. 265.144(a)(2) provides that "[t]he post-closure cost estimate is calculated by multiplying the annual post-closure costs estimated by the number of years of post-closure care required under Sec. 265.117." The undisputed annual post-closure cost estimate is $80,000. PPP Br. at 44. The undisputed number of years of post-closure care required under RCRA is thirty. PPP Br. at 44. The product of thirty years and $80,000 per year is clearly $2.4 million.
 
 
 26
 Application of the unambiguous language in 40 C.F.R. Sec. 265.144(a)(2) does not allow for the present value discounting that the Defendants advocate. Consequently, the district court did not abuse its discretion in ordering the Defendants to comply with the regulation.
 
 V. Appointment of a Receiver
 
 27
 Because the Defendants did not follow the district court's September 4, 1992 order and achieve full RCRA compliance within ninety days, the court, consistent with its prior warning, appointed a receiver on December 10, 1993, to identify the assets of the Defendants and liquidate those necessary to provide funding to achieve RCRA compliance. The Defendants contend in case No. 93-2618 that the district court lacked the authority or abused its authority in choosing this means to enforce RCRA compliance. PPP Br. at v, 11. The Defendants seek to substantiate this contention on several grounds.
 
 
 28
 The district court's determination to appoint a receiver is a matter firmly within its discretion and will be reversed only if such discretion has been abused. Guy v. Citizens Fidelity Bank & Trust Co., 429 F.2d 828, 833-34 (6th Cir.1970).
 
 
 29
 First, the Defendants claim that the appointment of a receiver cannot be viewed as an appropriate form of RCRA relief because Congress failed to expressly confer this power. PPP Br. at 12. RCRA specifically denotes a temporary or permanent injunction as "appropriate relief" in the face of RCRA violations. 42 U.S.C. Sec. 6928(a)(1). Nothing in RCRA, however, purports either to specify or limit the federal courts' authority with respect to how they are to enforce an injunction that is not obeyed. In fact, it makes no sense to read RCRA's authorization of suits to secure "appropriate relief," 42 U.S.C. Sec. 6928(a)(1), as allowing the federal courts to grant injunctions, but not to enforce them by judicially appropriate means.
 
 
 30
 The district court in this case relied on Federal Rules of Civil Procedure 66 and 70, as well as its inherent authority to fashion equitable relief and enforce its prior orders, to authorize its decision to appoint a receiver. J.A. at 190. After reviewing these bases of authority, we are convinced that the district court was well within its discretionary authority to appoint a trustee/receiver to secure PPP's compliance with the court's injunction. See Morgan v. McDonough, 540 F.2d 527, 533 (1st Cir.1976), cert. denied, 429 U.S. 1042 (1977); Feliciano v. Colon, 771 F.Supp. 11 (D.P.R.1991) (appointing special master to assure performance of non-compliant defendants' environmental obligations under injunctive order); United States v. City of Detroit, 476 F.Supp. 512, 520 (E.D.Mich.1979) (appointing Mayor of Detroit to administer water treatment plant of Detroit in order to achieve compliance with court's injunction and Clean Water Act regulations, after defendants defied court's orders).
 
 
 31
 Despite this authority, the Defendants assert that the district court abused its discretion by imposing this remedy because it is not consistent with RCRA's stated objectives to regulate the disposal of waste. The Defendants argue that RCRA's objectives "do not extend to a court interposing itself in the operation of hazardous waste facilities or in their remediation." According to the Defendants, the latter objective is left to CERCLA, with its well defined study, remediation, and cost recovery provisions, and the responsibility for such environmental compliance is a role limited to the EPA, not the federal district courts through the auspices of a receiver. PPP Br. at 13.
 
 
 32
 We also find this assertion meritless. Defendants are the RCRA violators, who have still failed to close their hazardous waste facility in the manner required by RCRA and the court's injunction. It is amazing that the Defendants now argue that to compel them to comply with RCRA would serve no objective of RCRA. The injunction commands that the Defendants close up the Richland facility in compliance with RCRA, and such action by the Defendants would undeniably serve RCRA's purpose. It logically follows that the district court's enforcement of the same injunction would also serve RCRA's purpose.
 
 
 33
 Finally, the Defendants argue in a similar manner that the district court lacked authority to appoint of a receiver to produce RCRA compliance because the Defendants no longer own or operate the Richland facility. PPP Br. at 11. They claim that RCRA only applies to current owners and operators of hazardous waste sites and that the cleanup of former hazardous waste sites is properly the subject matter of CERCLA. Id.
 
 
 34
 The Defendants were forced to relinquish title to the Richland facility to the State of Michigan in 1993 for failure to pay their property taxes, but this fact does not alter the Defendants' legal obligation to comply with the injunction to which they were already subject. The Defendants' argument amounts to the assertion that they can dissolve an injunction by an act of noncompliance--failure to pay taxes. This is absurd.
 
 
 35
 The Defendants incurred this RCRA liability while they were the owners and operators of the Richland facility. Although they no longer own the property, it is not impossible for them to comply with the injunction. The district court's Trustee Memorandum gives the Defendants, themselves, the opportunity to draw upon the proceeds from the receiver's liquidation of their assets to fund the compliance work at the site. In short, the Defendants' relinquishment of title to the Richland site has affected neither the need for their RCRA violations to be cured, nor Defendant's ability to comply with the injunction requiring this work to be done. Only if the Defendants remain unwilling to complete the closure with the funds generated by the receiver, will the State step in to perform the necessary work with the same funds.
 
 
 36
 In the end, it is clear that the district court had the authority to appoint a receiver and that it did not abuse its discretion in choosing this means of enforcing its permanent injunction.
 
 VI.
 
 37
 Based on the foregoing analysis, we AFFIRM the decisions of the district court.