Walter W. BORLAND II,
Plaintiff/Counter–
Defendant,

v.

UNITED STATES of America,
Defendant/Counter–
Plaintiff.

No. 98–CV–71774.

United States District Court,
E.D. Michigan,
Southern Division.

April 27, 2000.

Stephen M. Feldman, Finkel, Whitefield, Farmington Hills, Mi, Gary D. Strauss, Finkel, Whitefield, Farmington Hill, MI, for Plaintiff.

Thomas P. Cole, U.S. Dept. of Justice, Tax Div., Washington, DC, Elizabeth Lan, U.S. Dept. of Justice, Tax Div., Washington, DC, for Defendant.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

On December 6, 1999, the Defendant/Counter–Plaintiff, the United States of America ("Government"), filed a motion in which it asked the Court to enter a partial summary judgment in its favor and against the Plaintiff/Counter–Defendant, Walter W. Borland II. Thereafter, on February 11, 2000, Borland filed his response in which he stated his opposition to the Government's requested relief. For the reasons that have been set forth below, the Government's motion is granted.

### I.[1]

In May 1990, Borland was hired to serve as the president of Purity Casket Company, which was a manufacturer of fiberglass burial caskets, deck boxes, and dock boxes.[2] During the time periods relevant to the instant motion, the company changed its name from Purity Casket Company to Purity Systems, Incorporated to Enduroglas Corporation.[3] (Borland Dep. at 9–10.)

Borland's duties at Enduroglas were "to generally manage the business in concert with the balance of the management team and with the approval of the board of directors."[4] (Borland Dep. at 12.) When

---

1. The following facts were presented by the Government in support of its requested relief. In his response, Borland averred that, for the purposes of the instant motion, he does not dispute these facts. (Resp. at 2.)

2. Borland was also elected to the board of directors during the early part of 1990. (Borland Dep. at 21.)

3. Hereinafter, "Enduroglas" will be used to refer to all three names of the company at issue.

4. Among these duties, Borland (1) approved the hiring of a "handful" of employees, including senior managers or someone above a production role, (2) retained an accountant to assist in Enduroglas' finances in late 1991, and (3) participated in the decision to hire a

he started working at Enduroglas, four people reported to him: (1) Mark Gage,[5] (2) Alan Edens,[6] (3) Joe Mauer,[7] and (4) Pamela Edens.[8] During late 1990 or early 1991, Ronnie Melchert was hired as a new vice-president of manufacturing. As a result, Alan Edens reported to Melchert, who in turn reported to Borland. (Borland Dep. at 18–19.)

Enduroglas had been losing money since its inception several years before Borland's assumption of office as president. Prior to his arrival, Diamond Venture Associates ("Diamond Venture"), one of the company's shareholders, "continually advanced cash to the company in order to ensure that bills were paid, not just the payroll taxes, but the other expenses of the company." (Borland Dep. at 39–40.) However, in the latter part of 1990, Diamond Venture stopped infusing capital into the company and the ensuing cash flow crisis resulted in the initial nonpayment of the payroll taxes as of the fourth quarter of 1990. (Borland Dep. at 40, 43–44.)

During his deposition, Borland admitted that he was aware of the initial nonpayment of the withholding taxes to the Government:

> Q: And after you came on board, there came a time when the company was unable to pay its withholding taxes to the government, right?
>
> A. Yes.
>
> Q: Do you know when this occurred?

second accountant to help (a) reconcile the payroll records, (b) ensure that the correct tax returns were being filed, and (c) commence discussions with the Internal Revenue Service ("IRS") about putting the company on a payment plan. (Borland Dep. at 13–14, 58–59, 61.)

5. Gage was the executive vice-president who was responsible for sales.

6. Alan Edens was the vice-president of manufacturing. His primary tasks were (1) quality control and (2) "getting the caskets out the door." (Alan Edens IRS Interview at 1.)

> A: To the best of my recollection, it was the latter part of 1990.
>
> Q: And how did you learn about this inability of the company to pay its withholding taxes?
>
> A: The company had been losing money since inception. One of the reasons that I was asked to get involved was to essentially try to turn around the company. And it wasn't a surprise that the company couldn't live without the capital infusions, but when the capital was no longer available, the cash flow crisis arose which resulted in the initial nonpayment of the payroll taxes.
>
> Q: So you were aware of the initial nonpayment of the payroll—Let me rephrase that. So you were aware of the initial nonpayment of the withholding taxes to the government?
>
> A: Yes.

(Borland Dep. at 43–44.)

There is also evidence that, during the later periods of his presidency, Borland knew that the withholding taxes had not been paid. For example, Borland testified during his deposition that when the company moved to Manistee, Michigan in August 1991, he was aware that Enduroglas' tax obligations had not been satisfied. (Borland Dep. at 76–77.) Additionally, he retained the services of an accountant in late 1991 because "[b]y that time in 1991, the company had missed several quarterly tax payments or several tax payments."

7. Mauer was the secretary/treasurer who was responsible for (1) keeping the board minutes and the corporate records, (2) signing the checking accounts, and (3) making cash disbursements. (Borland Dep. at 18.)

8. Pamela Edens, wife of Alan Edens, was the administrative manager whose responsibilities included (1) keeping the books, (2) taking care of routine paperwork, (3) handling the mail, (4) preparing the payroll checks, (5) distributing payroll checks, and (6) performing "essentially any general office function or clerical function." (Borland Dep. at 19.)

(Borland Dep. at 61.) In total, the Government asserts that Enduroglas "failed to pay all or part of its withholding taxes for the period from the fourth quarter of 1990 through the fourth quarter of 1991." (Mot. Br. at 7.)

Enduroglas' failure to pay the withholding taxes partially resulted from its prioritization system, which "was based on immediacy of the impact of not paying a given party." [9] (Borland Dep. at 50.) Under this system, "[t]he employees, excluding officers, were always paid first. Utilities or other services that could shut down the business were paid second. Primary critical suppliers who could shut down the manufacturing process were paid third, and officers generally came fourth. The balance of the creditors were typically in a pool after that." (Borland Dep. at 51.)

Borland's employment was terminated on December 19, 1991 as a result of his disagreements with Howard Diamond concerning a potential merger with another company.[10] In 1992, Enduroglas filed for bankruptcy in 1992 and the company's assets were liquidated.

## II.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. Subsection 56(c) provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and a summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party.[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed.R.Civ.P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir.1987). Rather, it is the duty of the Court to determine "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

When a summary judgment motion is predicated on a factual issue and is adequately supported, the non-moving party must take some affirmative action to avoid the entry of a summary judgment.

When a motion for summary judgment is made and supported as provided in

---

**9.** Along with Alan Edens, Joe Mailer, and John Patterson, Borland was part of the group that determined the placement of particular creditors into categories. (Borland Dep. at 51–52.) However, according to Alan Edens, Borland controlled the decision-making process. (Alan Edens IRS Interview at 5, 8.)

**10.** On this date, the shareholders of Enduroglas issued a "Consent of the Shareholders of Enduroglas Corporation," which stated, among other things, that:

1. I consent to the immediate removal of Walter Borland, Mark Gage, and Alan Edens from the Board of Directors of the Corporation.
(Cole Decl. Ex. D.)

**11.** "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The mere existence of a scintilla of supporting evidence is insufficient. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). Additionally, a party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" mandates the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III.

■ The Government asserts that "there is no material issue of fact as to whether Plaintiff Borland was a responsible person within the meaning of 26 U.S.C. § 6672 or as to whether Plaintiff Borland wilfully failed to turn over funds withheld from the paychecks of the employees of Enduroglas Corporation for the fourth quarter of 1990, the first three quarters of 1991, and October and November 1991." (Mot. at 1.) Section 6672, provides in part that:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Thus, under § 6672, an individual is liable if he (1) is a "responsible person" under the statute and (2) willfully failed to pay the Government the amount due. *Gephart v. United States*,

818 F.2d 469, 473 (6th Cir.1987). Borland, as the taxpayer, "bears the burden of proving that he is not a responsible person under section 6672 and that he did not act willfully in failing to pay over the taxes." *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir.1993) (citation omitted).

### A.

■ "It is well established that the test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs to the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Gephart*, 818 F.2d at 473 (citation omitted). In order to determine if a person is responsible, the Court is guided by the following factors:

(1) the duties of the officer as outlined by the corporation by-laws;

(2) the ability of the individual to sign checks of the corporation; ...

(3) the identity of the officers, directors and shareholders of the corporation;

(4) the identity of the individuals who hired and fired employees;

(5) the identity of the individuals who were in control of the financial affairs of the corporation.

*Gephart*, 818 F.2d at 473 (citation omitted).

■ In light of the above factors, the Court finds that Borland was a responsible person under § 6672. During his entire employment at Enduroglas, Borland was the president of the company. In this official capacity, he (1) signed checks, including payroll checks, (2) hired employees, including two accountants in 1991, and (3) helped to determine which creditors got paid. (Borland Dep. at 38, 51–52, 59, 61; Alan Edens IRS Interview at 3, 5, 8.) Moreover, Borland's name was the sole name on the tax returns for the fourth quarter of 1990 and the first three quarters of 1991. (Cole Decl. Ex. G.)

While Borland might argue that others were involved in the control of Enduroglas, "liability requires the existence of only significant as opposed to absolute control of the corporation's finances." *Kinnie*, 994 F.2d at 283. In general, a responsible "person is one with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible to the corporation's failure to pay over its taxes, or more explicitly, one who has authority to direct payment of creditors." *Id.* Thus, since Borland was intimately involved with the financial aspects of the company, the Court finds him to be a responsible person under § 6672.

### B.

In order to establish liability under § 6672, the Government must establish that the allegedly responsible person willfully failed to pay the tax debt. "Willfulness is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government." *Gephart*, 818 F.2d at 475. Thus, "[a] responsible person who makes a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than make tax payments, is liable for willful failure." *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988).

▮ Borland has admitted that he was aware of Enduroglas' failure to make several tax payments. (Borland Dep. at 43–44, 61, 76–77.) Despite this knowledge, Borland continued to pay other creditors instead of making the necessary payments to the Government, While the prioritization system may be understandable in light of Enduroglas' troubled finances, "[i]t is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern–the government cannot be made an unwilling partner in a floundering business." *Collins*, 848 F.2d at 741–42. Thus, since Borland intentionally arranged to pay other creditors instead of making the required tax payments, the Court finds that his conduct constitutes willfulness under § 6672 for the period of his employment at Enduroglas (to wit, the fourth quarter of 1990, the first three quarters of 1991, and October and November 1991).

### IV.

Borland asserts that the above discussion is unnecessary to the resolution of the instant motion because a genuine issue of a material fact exists as to whether the IRS selectively enforced § 6672 against him due to its belief in his alleged homosexuality.

▮ Under the doctrine of selective enforcement, the court should dismiss a case or take other appropriate action if a defendant can prove that the prosecutor or investigator intentionally singled him out for punishment because of membership in a protected group or the exercise of a constitutionally protected right. *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir.1996). This doctrine applies to cases involving sexual orientation. *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir.1997). "In order to state a *prima facie* selective prosecution defense, defendants bear a heavy burden of establishing that (1) defendants have been singled out while other similarly situated violators were left untouched, and (2) that the government selected defendants for prosecution 'invidious[ly] or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of [their] constitutional rights.'" *United States v. Production Plated Plastics, Inc.*, 742 F.Supp. 956, 962 (W.D.Mich. 1990) (citing *United States v. Bustamante*, 805 F.2d 201, 202 (6th Cir.1986)). At the same time, "[t]he government generally is afforded a presumption of validity in the enforcement of federal statutes and its discretion in enforcing federal statutes is extremely broad, although not unfettered."

*Production Plated Plastics,* 742 F.Supp. at 962.

Borland argues that, for the purposes of this motion, he is entitled to an inference of selective enforcement for two reasons. First, he avers that, on May 14, 1996, he received IRS documents entitled "Investigation History"[12] pursuant to a request made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. In these documents, the entry for September 18, 1992 was allegedly "whited-out." When Borland obtained another copy of these documents on or about October 21, 1989,[13] he realized that the September 19, 1992 entry referenced his homosexuality.[14] He contends that "[t]he general rule is that failure to produce available evidence which would help decide the issue raises the inference that such evidence would be unfavorable to that party if produced." *Kowalchuk v. United States,* 176 F.2d 873, 877 (6th Cir.1949) (citations omitted).

■ The Court rejects Borland's argument. The first set of documents was not produced by the Government during the pendency of the instant litigation. In fact, they were obtained on May 14, 1996 pursuant to a FOIA request, which was about two years prior to the commencement of this lawsuit (to wit, April 28, 1998). Thus, the general role that has been cited by Borland is inapplicable to the resolution of this matter. Besides its general obligations under FOIA, the Government was not required to produce all available evidence to Borland in 1996.

Second, Borland asserts that a genuine issue of a material fact exists as to wheth-er other responsible persons were identified and whether such persons were easier to locate than himself. However, "[s]ection 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs." *Gephart,* 818 F.2d at 476. Thus, the Government is allowed "to pursue all those whom it deems responsible or, as is the case here, only one person, even though there may have been more than one potentially responsible person." (Mot. Br. at 17.) Moreover, as discussed in earlier sections, the Government has presented credible evidence that Borland had significant control over Enduroglas. Thus, there is an adequate explanation for the Government's decision to prosecute Borland.

Accordingly, the Court finds that, since Borland has failed to present any proof of selective prosecution other than his mere allegations and arguments, a genuine issue of a material fact does not exist with respect to this issue. Thus, Borland's assertion of the selective enforcement defense does not preclude the entry of a partial summary judgment in favor of the Government.

## V.

Accordingly, the Government's motion for a partial summary judgment is granted for the reasons that have been stated above. The parties shall file their final pretrial order on or before June 12, 2000. The final pretrial conference will be held on June 19, 2000 at 2 p.m. and a trial on

---

**12.** The documents were completed by Alan Belkonen, who is a revenue officer for the IRS.

**13.** This set of documents was obtained in response to a request for documents in conjunction with Belkonen's deposition. (Resp. at 3.)

**14.** This entry reads as follows:
9–18–92   P/C from PAUL DATTANI–CID Detroit @ 226–2037 He has an informant looking for a reward who claims that Borland is living in California–with some people, *is a homosexual,* is employed using his father's SSN (a possible 5 year felony) and he bled embezzled STOLE funds–trust funds from the corporation–causing the bankruptcy. Borland is supposedly in San Francisco. He will get back with me when & if be gets a second call.
(Resp. Ex. B [emphasis added].)

the remaining issues in this action will be conducted on July 10, 2000 at 8:30 a.m.

IT IS SO ORDERED.